**Walter MILLS, Personal Representative of the Estate of Simone Mills, Deceased, Plaintiff-Appellant,**

**v.**

**James C. REDINGTON, M.D., Defendant-Respondent.**

**No. 52305.**

Missouri Court of Appeals, Eastern District, Division One.

July 28, 1987.

Motion for Rehearing and/or Transfer Denied Aug. 27, 1987.

Application to Transfer Denied Oct. 13, 1987.

Coggan R. Mills, Clayton, for plaintiff-appellant.

Gary P. Paul, Brinker, Doyen & Kovacs, P.C., Clayton, for defendant-respondent.

KELLY, Judge.

Walter Mills, personal representative of the estate of Simone Mills, his deceased wife, appeals from the judgment of the

trial court granting respondent Dr. James Redington's motion for directed verdict in a medical malpractice action which Simone Mills had initiated against respondent prior to her death. The judgment is affirmed.

The following account briefly summarizes the facts. We reserve details of additional evidence presented by appellant for later discussion where pertinent.

Simone Mills had been a regular patient of Dr. Redington for twenty-three years for various ailments including anemia, nerves, and heart problems. In 1977 she was diagnosed as having multiple myeloma, a rare and incurable cancer of the bone marrow. She was hospitalized then and intermittently through 1981 while under his care. Having previously undergone cobalt treatment and chemical therapy, she was told in April 1981 following her release from the hospital that her cancer was again in remission.

She continued to see Dr. Redington for monthly check-ups and in the ensuing summer months she complained to Dr. Redington of the recurrence of symptoms which she linked to the cancer. She stated he diagnosed her problems as osteoporosis and recommended only aspirin and exercise. Dissatisfied, she and her husband sought another doctor's opinion. Dr. James M. Epstein first saw Simone Mills August 29, 1981. He immediately hospitalized her and renewed her cancer treatment program.

Simone Mills subsequently filed this malpractice action against Dr. Redington. The sole paragraph of the petition concerning Dr. Redington's alleged medical malpractice averred as follows:

That in the performance of the said treatment, the Defendant did fail to exercise the proper degree of care in the treatment of Simone Mills in that the Defendant negligently and carelessly failed to take the medical history of Simone Mills into account and failed to prescribe appropriate activities and failed to accurately interpret tests and data and make appropriate prescriptions and tests, the Defendant failed to properly monitor Simone Mills' condition following her dis-

charge from the hospital in April 1981, Defendant failed to properly diagnose Simone Mills' condition following her discharge from the hospital in April 1981, Defendant failed to properly treat Simone Mills following her discharge from the hospital in April, 1981.

Simone Mills died in 1984 prior to the trial on her claim and her husband Walter Mills was substituted to maintain the action. At trial, Walter Mills testified in behalf of his deceased wife. Appellant also presented as testimony the depositions of Simone Mills and Dr. James M. Epstein. At the conclusion of appellant's case, respondent moved for a directed verdict.

Respondent's motion seeking that the trial court direct its verdict in his favor raised appellant's failure to establish either a standard of care or its breach and to prove beyond speculation any injury or damage resulting from any alleged malpractice. The trial court granted the motion.

Appellant claims the trial court's decision was erroneous because certain remarks made by respondent's counsel in his opening statement constituted judicial admissions negating any requirement that appellant prove a certain standard of care; further, any proof of the proper standard of medical care involved matters within the knowledge of laymen dispensing with the need for expert testimony; and, finally, appellant's evidence did establish injury or damages resulting from respondent's actions. Appellant also argues whether or not respondent had advised appellant of the appropriate treatment she required, *i.e.* hospitalization, is an issue of fact properly within the province of the jury.

In reviewing the granting of a motion for directed verdict at the close of plaintiff's case, we must consider whether plaintiff has presented substantial evidence to require submission to the jury. This court must consider the evidence and all the reasonable inferences therefrom in the light most favorable to plaintiff in order to determine whether plaintiff made a submissible case. *Rustici v. Weidemeyer,* 673 S.W.2d 762, 765[1] (Mo. banc 1984); *Majors v. Butner,* 702 S.W.2d 539, 543[1] (Mo.App.

1985). In a medical malpractice case, plaintiff must present sufficient evidence to establish first, a causal connection between the act or omission of the physician and the claimed injury; second, proof that the act or omission was negligently performed; and third, proof that the physician failed to meet the requisite standard of care. *Cebula v. Benoit*, 652 S.W.2d 304, 307[1] (Mo. App.1983).

The current standard of care applicable to physicians and surgeons in medical malpractice cases is the degree of skill and learning ordinarily used under the same or similar circumstances by the members of their profession. *See* M.A.I. 11.06; *Hurlock v. Park Lane Medical Center, Inc.*, 709 S.W.2d 872, 882–83[16] (Mo.App.1985). The general rule is that where the exercise of the proper degree of care and skill of a physician is at issue, expert medical testimony is essential. *Cebula*, 652 S.W.2d at 307[3]; *see also* Annot., 81 A.L.R.2d 597, 617 (1962). As such, it would have been appellant's burden to prove that actions taken by respondent did not meet the standard of care commonly exercised by the ordinarily skillful, careful and prudent physician in the same or similar circumstances. *Byers v. Spaulding*, 725 S.W.2d 893, 896[8] (Mo.App.1987).

An exception to the requirement of proof by expert testimony from members of the medical profession in a medical malpractice case occurs when the act of negligence relied on involves a matter which is within the knowledge of laymen and is not within the exclusive knowledge of members of the medical profession. *Hurlock*, 709 S.W.2d at 883[16]. This exception, however, is tightly circumscribed in order to guard against the danger of permitting lay jurors to establish arbitrary standards relative to matters beyond their common experience and knowledge and to decide crucial issues upon nothing more than speculation, conjecture and surmise. *Id.*

Proof of facts essential to submissibility of a case may not rest on speculation or conjecture. *Majors*, 702 S.W.2d at 544[5]. If the proof offered must depend on specu-lation or conjecture, then a verdict based on such proof cannot stand. *Id.* [6].

Appellant's petition alleges that respondent, in his follow-up care of Simone Mills after her April 1981 hospital discharge, improperly diagnosed and improperly treated her condition. She contended his actions caused her to be rehospitalized in August 1981. Notwithstanding these assertions, the record in this case is bereft of any expert testimony that Dr. Redington's actions in his diagnosis and treatment of Simone Mills breached the requisite standard of care prevailing in the medical profession generally.

Our careful review of the deposition of Dr. James M. Epstein, appellant's sole expert, discloses no testimony indicating that Dr. Redington's diagnosis and treatment of Simone Mills was professionally substandard or that his follow-up treatment of her precipitated the need for her rehospitalization in August 1981. His testimony effectively recites only what *his* individual custom or practice was, under comparable circumstances. As noted in *Hurlock*, 709 S.W.2d at 884, where the patient relied on the testimony of certain doctors as to their *individual* custom or practice, the patient failed to make a submissible medical malpractice case against her treating physicians absent any medical expert testimony that the treating physicians had breached the requisite standard of care prevailing in the medical profession *generally*. *Hurlock*, 709 S.W.2d at 883[19].

Mere evidence that the conduct of a physician or surgeon did not measure up to the standards of an individual member of the profession, as opposed to the standards of the profession at large, does not constitute substantial evidence of probative force to support a submission of negligence in a medical malpractice case as individual standards may be higher or lower than the profession as a whole. *Id.* at 884[20]. The same principle applies with equal force here.

Appellant downplays the deposition of Dr. Epstein in an effort to minimize this fatal evidentiary omission. Appellant attempts to sidestep the absence of proof by

appellant's own expert witness that Dr. Redington's actions failed to meet the requisite standard of care or that his treatment plan caused her to be rehospitalized. Turning to respondent's opening statement, appellant highlights the following excerpts:

... on about the 20th of July when Dr. Redington got an x-ray report ... He told her what she didn't want to hear: that she would have to go back in the hospital.

... [A]nd Dr. Redington urged them ... and called them again to come back in the office and 'Let's talk about this because you need hospitalization and treatment ... (O)n August 7, [a]gain he recommended that she go into the hospital.... [T]he Millses kind of fooled round from about the 20th of July when first told to go into the hospital.... [S]he did not tell Dr. Epstein that the doctor wanted her to go back in the hospital.

■ Appellant characterizes these remarks by respondent's counsel as judicial admissions that respondent had advised hospitalization for Simone Mills, so that respondent himself "negated any proof a standard." As a rule opening statements usually are not considered as judicial admissions unless an attorney makes a clear, unequivocal admission of fact, in which case they are binding on the party in whose interest they are made. *DeArmon v. City of St. Louis,* 525 S.W.2d 795, 799[1] (Mo. App.1975). A mere statement or outline, however, of anticipated proof upon one or more issues in the case is not to be regarded as a binding admission to either bind the party whose counsel made the statement or to dispense with the necessity of proof on the issue on the part of his adversary. *Id.* [2]. Unlike an evidentiary admission, an admission in the opening statement is a judicial admission and is conclusive. *Id.* [3].

■ The question raised for our consideration is whether respondent's counsel made a clear unequivocal admission in his opening statement that respondent was liable for appellant's injuries. That respondent himself had recommended hospitalization for appellant in July 1981 is not an admission of what constituted the appropriate standard of care in this case. Nothing in counsel's remarks intimate that hospitalization alone was the only acceptable treatment plan in order to conclude that the proper standard of care in these circumstances mandated hospitalization and that failure to hospitalize her breached the duty of care owed. We reject the position that the outline by respondent's counsel of evidence he anticipated admitted either the standard of care applicable here or the breach of such standard.

The judgment rendered in favor of respondent and against appellant upon respondent's motion for a directed verdict at the close of appellant's case was proper. Accordingly, we affirm.

SATZ, P.J., and CRIST, J., concur.