**STATE of Missouri, ex rel., JEFFERSON COUNTY, Respondent,**

v.

**Michael WATSON, Appellant.**

**No. 61256.**

Missouri Court of Appeals,
Eastern District,
Division Three.

May 18, 1993.

Michael L. Watson, pro se.

Benson Cytron, House Springs, for respondent.

STEPHAN, Judge.

Michael Watson ("Watson") appeals from an order and decree for permanent injunction which: (1) permanently ordered, restrained and enjoined Watson from depositing any solid waste on his property; (2) ordered him to remove all solid waste from said real estate; and (3) ordered him to pay a penalty to the "Jefferson County Treasurer as Trustee for the Jefferson County School Fund" for each day he remains in violation of the order. We affirm. Jefferson County filed a motion to strike Watson's statement, brief and argument. This motion is denied.

At the outset, we note that Rule 81.12 states:

(a) **Contents of Record on Appeal.** The record on appeal shall contain all of the record, proceedings and evidence necessary to the determination of all questions to be presented, by either appellant or respondent, to the appellate court for decision. In order to reduce expense and expedite the preparation of the record on appeal, it is divided into two components, i.e. the "legal file" and the "transcript".

The legal file shall be so labeled with a cover page and contain clearly reproduced exact copies of the pleadings and other portions of the trial record previously reduced to written form.

The transcript shall contain the portions of the proceedings and evidence not previously reduced to written form.

The legal file shall always include, in chronological order: the pleadings upon which the action was tried, the verdict, the findings of the court or jury, the judgment or order appealed from, motions and orders after judgment, and the notice of appeal, together with their respective dates of filing or entry of record; except the parties may agree in writing upon an abbreviated or partial record on appeal or upon a statement of the case as provided in Rule 81.13.

Here, in Watson's legal file, he failed to include the petition upon which the action was tried. The omission of this critical document leaves us to speculation and conjecture with regard to the issues framed in the pleadings upon which the trial court took its action.

We note that Jefferson County filed a motion to strike Watson's statement, brief and argument. Jefferson County did not assert that Watson's legal file failed to include the petition upon which the action was tried. Rather, Jefferson County argues that Watson's brief fails to comply with Rule 84.04(d). Specifically, Jefferson County argues that: (1) Watson cites no legal authority upon which to base his Points Relied On or his Argument; (2) Watson's Argument is so imprecise and general as to make it impossible to respond; (3) Watson's Facts do not contain references to the legal file or transcript with regard to much that is contained therein; and (4) the Statement of Facts contains false and misleading statements. Although we agree with some of these observations and will address them more thoroughly herein, we have reviewed Watson's six points and we decline Jefferson County's invitation to strike Watson's statement, brief and argument.

Before addressing Watson's appeal, we note that we have adduced the following facts from the deficient record that we have before us. Jefferson County sought an injunction against Watson pursuant to §§ 260.200 to 260.245, RSMo.1986 and RSMo.Cum.Supp. 1991, to enforce the provisions of its Solid Waste Management Ordinance. The provisions of the Solid Waste Management Ordinance include the following:

*Section 1.33:—SOLID WASTE* means unwanted or discarded waste materials in solid or semi-solid state, including but not limited to garbage, ashes, street refuse, rubbish, bulky rubbish, dead animals, animal or agricultural wastes, yard wastes, discarded appliances, special wastes, industrial wastes, demolition and construction wastes and rubble, discarded tires and derelict automobiles or their parts.

A. *Commercial solid waste* means solid waste resulting from the operation of any commercial, industrial, institutional or agricultural establishment.

B. *Residential solid waste* means solid waste resulting from the maintenance, occupancy and operation of dwelling units including multiple housing facilities.

*Section 1.10:—DERELICT AUTOMOBILES* means inoperable, junk automobiles, and also abandoned automobiles.

*Section 5.1:—DISPOSAL LOCATIONS* Solid waste shall be deposited at an approved processing site or disposal site.

*Section 10.1:* It shall be unlawful for any person to: (1) deposit solid waste in any solid waste container other than his own, without the written consent of the owner of such container and/or with the intent of avoid [sic] payment of the service charge for solid waste collection and disposal; (2) interfere in any manner with solid waste collectors in the lawful performance of their duties; (3) dispose of solid waste at any facility or location which is not approved by the County and State; (4) engage in the business of storing, collecting, transporting, processing or disposing of solid waste within the County without a permit from the Coordinator, or operate under an expired permit, or operate after a permit has been suspended or revoked.

During the two-day trial, Jefferson County introduced pictures of Watson's property. Jefferson County appears to have contended that the pictures reflected unwanted or discarded waste materials in solid or semi-solid state, including, but perhaps not limited to, garbage, rubbish, bulky rubbish, discarded appliances, discarded tires and derelict automobiles.

At the close of all evidence, Jefferson County submitted the cause on its pleadings and proof. The trial court, thereafter, issued an order and decree for permanent injunction which permanently ordered, restrained and enjoined Watson from depositing any solid waste on his property located at 9340 Lone Oak, Pevely, Missouri. The trial court cited the definition of solid waste as defined in Section 1.33, which we have set out above. Additionally, the trial court ordered Watson to remove all solid waste from said real estate on or before December 14, 1991. Finally, the trial court ordered Watson to pay a penalty to the "Jefferson County Treasurer as Trustee for the Jefferson County School Fund" in the amount of $100.00 per day for each day he remained in violation of the order after December 14, 1991.

■■■ Review of this court-tried case is governed by Rule 73.01 and the well-known principles presented in *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). Therefore, the decision of the trial court must be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Id.* at 32. We exercise the power to reverse a judgment as against the weight of the evidence with caution and a firm belief that the judgment is wrong. *Id.* We also give due regard to the trial court's ability to judge the credibility of witnesses. Rule 73.01(c)(2).

■■ Watson's first point is:
[t]he Solid Waste Ordinance of Jefferson County is unlawful and unconstitutional by being overbroad and not staying within the legal limits of Chapter 260 RSMo 1986. In particular the Ordinance definition of *DERELICT AUTOMOBILES* goes beyond the limits of what the Solid Waste law is meant to regulate and infringes

upon an area of regulation reserved for the Department of Revenue and Department of Safety. The Ordinance also fails a test of constitutionality for vagueness when the Ordinance defines *SALVAGE STORAGE AND PROCESSING YARD* but fails to set forth any regulation or guidelines required to be a lawful facility.

This point fails to state wherein and why the ruling of the court was erroneous as required by Rule 84.04(d). This fails to preserve any question for review. *Thummel v. King*, 570 S.W.2d 679, 684 (Mo. banc 1978). Watson's first point is, therefore, denied.

Watson's second point is that:
[t]he verdict in this case is based upon insufficient and incompetent evidence. Solid Waste's evidence consisted of photographs of [Watson's] property and personal property. Other than picturing vehicles, equipment, steel, a soda machine, trucks apparently being repaired or rebuilt, and parts necessary to facilitate that work nothing unlawful, unsanitary, or otherwise offensive was shown in the pictures.

This point, too, fails to state wherein and why the ruling of the court was erroneous as required by Rule 84.04(d). This fails to preserve any question for review. *Thummel v. King*, 570 S.W.2d 679, 684 (Mo. banc 1978). Watson's second point is, therefore, denied.

■ Watson's third point is that:
[Watson] was denied a fair trial when the Court refused to squash/suppress [sic] "Two Search Warrants", or ORDER the disclosure of "probable cause" to search and what evidence was obtained from the search when the unlawful-unconstitutional acts of Solid Waste Management were deliberate acts done to prevent testimony of the defendant or a futile attempt to find some act of wrongdoing on the part of the appellant with which some legal leverage could be obtained.

The trial court overruled Watson's motion to suppress the search warrants on the basis that motions to suppress lie only in criminal cases. We agree. Black's Law Dictionary 1014 (6th ed. 1990) defines a motion to suppress as a "[d]evice used to eliminate from

the trial of a criminal case evidence which has been secured illegally, generally in violation of the Fourth Amendment (search and seizure), the Fifth Amendment (privilege against self-incrimination), or the Sixth Amendment (right to assistance of counsel, right to confrontation), of the U.S. Constitution." Since this is a civil case, Watson's point is without merit.

■ Additionally, Watson claims that the trial court erred when it refused to order the disclosure of "probable cause" to search and what evidence was obtained from the search. This claim is also without merit. Specifically, Watson states:

[t]he court limited appellant's inquiry into the search even though the matter was brought up by the county's witness. The inability of appellant to discover what evidence plaintiff might have or try to allude to that had been derived from the searches prohibited appellant from testifying. Had appellant not been prevented from testifying it would have been brought out that Jerry Brown perjured himself for a second time when he claimed he helped Department of Revenue to obtain the search warrants. Appellant had called the department in question and verified that no such action had taken place on the part of that department nor would there ever be a reason for such assistance. It should be noted that Solid Waste can in fact obtain a search warrant under certain circumstances (§ 260.210 RSMo 1986); Jerry Brown had no such lawful purpose in mind when he obtained the warrants as supported by his perjured testimony.

A thorough review of the record indicates that Watson asked Floyd Jerry Brown ("Brown"), the Coordinator of the County Solid Waste Department, whether Brown had been refused admittance to Watson's property. Brown stated that he believed that was correct. After Brown told Watson that he did not know who told him this, Watson asked Brown whether he brought a highway patrolman to detain him so that Brown could do "whatever he wanted." Brown stated that he had done so because he believed that Watson was operating a salvage yard without a license. Jefferson County objected on the grounds that this line of questioning was irrelevant and immaterial to the issues of the case. Although the trial court overruled Jefferson County's objection, Watson failed to question Brown further about the search warrants. Thus, Watson is incorrect when he states that the trial court limited his inquiry into the search warrants. Rather, Watson failed to inquire and, thus, he adduced no evidence.

Moreover, even if Watson were unable to discover what evidence Jefferson County might have had and he was thereby hindered in the presentation of his case, Watson proceeded to trial, without the assistance of counsel, at his own peril. His inability to elicit information he desired was not the trial court's fault.

Further, there is no reason for this court to believe that the information Watson sought would shed any light on these proceedings. Brown stated that he sought a search warrant because he believed that Watson was operating a salvage yard without a license. This is a collateral issue which has no apparent bearing on this civil case, the purpose of which was to determine whether Watson violated the Solid Waste Ordinance.

Moreover, the court did not prohibit Watson from testifying. Rather, the court repeatedly told him that he had the right to testify. Watson's third point is without merit.

Watson's fourth point is that he was denied a fair trial when the trial court denied his motion for a more definite statement because he was unable to prepare a defense for trial based on the claims stated in the complaint. Watson also states that he was "denied a clear and concise statement of what the complaint alleged and was denied a fair trial when the Court denied the request for a more definite statement."

A review of the record indicates that the trial court overruled Watson's motion for a more definite statement explaining that it was past the stage for hearing on the preliminary injunction. We agree. The trial court also noted that it had reviewed the pleadings and that they were sufficient. As we have previously stated, Watson failed to include

the pleadings in his record on appeal. Since we are unable to say that the trial court's determination is not supported by substantial evidence, is against the weight of the evidence, or either erroneously declares or applies the law, Watson's fourth point is denied.

Watson's fifth point is that he was denied a fair trial when the: "Court stopped appellant from inquiring into [Brown's] qualifications to testify as an expert witness then accept Brown's statements as fact and then declares Brown's statements to be observations and not opinions requiring an 'expert witness' status." Watson contends that he: "was prevented from attacking the witness in any structured manner because of the Court's changing the playing field to protect the witness at every opportunity." Watson alleges that: "the Court had only pictures with which to determine whether a vehicle violated the ordinance." Watson argues that he: "was unable to attack the testimony of the witnesses even though they were making statements as to the ultimate issue."

▮▮▮ Whether a witness' qualifications to state an opinion are sufficiently established rests largely in the discretion of the trial court and its ruling will not be disturbed on appeal unless there is a clear showing of abuse. *Hord v. Morgan,* 769 S.W.2d 443, 448 (Mo.App.1989). The issue in determining whether a particular witness is an expert is not whether others are better qualified. *Seabaugh v. Milde Farms, Inc.,* 816 S.W.2d 202, 208 (Mo. banc 1991). The question is whether the witness possesses peculiar knowledge, wisdom or skill regarding the subject of inquiry, acquired by study, investigation, observation, practice or experience. *Id.* If the witness has some qualifications, the testimony should be permitted. *Hord v. Morgan,* 769 S.W.2d at 448. Further, the extent of an expert's experience or training in a particular field goes to the weight of the testimony and does not render the testimony incompetent. *Id.*

▮▮▮ Clearly, Brown had some qualifications. In addition to being the Coordinator of the Jefferson County Solid Waste Department, he has a Master's Degree in Sanitary Science and a Bachelor's Degree in Biology. However, Jefferson County believed that it could make its case based solely on the admission of photographs of Watson's property and the trial court's application of the Solid Waste Ordinance to its case. Jefferson County, therefore, did not establish that Brown is an expert. The trial court explained that Jefferson County was under no obligation to present expert testimony at all. The court further explained that what Jefferson County needed to establish was that there are things like derelict automobiles and tires that fall into the categories of the ordinance. The trial judge stated that Brown is a fact witness. He took pictures of Watson's property which led to the allegations set forth in the complaint. Finally, the trial court stated that this case is not susceptible to expert testimony because all the evidence should be that which a lay person could evaluate without the aid of an expert witness. We agree.

Moreover, Brown has failed to demonstrate how his inability to "attack the witness in any structured manner" prejudiced him. The pictures which Jefferson County admitted in this case speak for themselves. It is upon these pictures that the trial court determined that Watson had deposited solid waste upon his property in violation of the Solid Waste Management Ordinance. Watson's fifth point is, therefore, denied.

Watson's sixth point is that he was denied a fair trial when the "Court sided with the plaintiff by aiding counsel in putting forth its case and withheld evidence of wrongdoing that directly affected the credibility of the witness and allowed perjury of [sic] the part of the plaintiff and then the suborning of the perjured testimony by plaintiff's counsel."

Contrary to Watson's position, the trial court did not side with Jefferson County by aiding counsel in putting forth its case. Rather, the trial judge remained fair and impartial to both parties. He granted Watson excessive leeway in asking repetitious, cumulative questions. Moreover, although the court was under no obligation to do so, it aided Watson at various points throughout the trial.

Furthermore, not only do we find no indication that Watson was denied a fair trial by

the court siding with the plaintiff and by aiding Jefferson County in putting forth its case, we are unable to discern what Watson is talking about when he alleges that the trial court withheld evidence of wrongdoing that directly affected the credibility of the witness and "allowed perjury of the part of the plaintiff and then the suborning of perjured testimony by plaintiff's counsel." Watson does not identify the witness to whom he is referring. Moreover, we are unable to find any evidence of wrongdoing on the trial court's part.

In the argument portion of this point, Watson argues that some of "the content of the proceeding has been lost to the transcription of the record; this Court denied appellant's request to review the tapes of the trial and to supplement the transcript with copies of the tape which would have clearly shown the antagonism between the appellant and the Court." Appellant claims he has "recordings of the proceedings which should be made a part of the record and reviewed in its entirety." This argument does not follow the order of the point relied on in violation of Rule 84.04(e). Moreover, Watson fails to allege how and/or why the contents of the proceeding have been lost to the transcription of the record. The basic thrust of Watson's argument appears to be that a written record cannot show verbal antagonism between two parties. As we have previously stated, the trial judge remained fair and impartial to both parties. He granted Watson excessive leeway in asking repetitious, cumulative questions. Moreover, although the court was under no obligation to do so, it aided Watson at various points throughout this trial. Watson's contention is, therefore, without merit. Watson's entire sixth point is denied.

 In closing, we note that not only is Watson's appeal without merit due to the above reasons, it is also deficient in that it violates Rule 84.04(d). That Rule states, in pertinent part:

[t]he points relied on shall state briefly and concisely what actions or rulings of the court are sought to be reviewed and wherein and why they are claimed to be erroneous, *with citations of authority thereunder* ... Setting out only abstract statements of law without showing how

they are related to any action or ruling of the court is not a compliance with this Rule. (Emphasis ours.)

In *Thummel v. King,* 570 S.W.2d 679, 687 (Mo. banc 1978), our Supreme Court noted that although Rule 84 does not require citation of authority in every instance, appellant maintains the burden of demonstrating error by the court below. The court stated:

Thus, if the point advanced in not a matter of first impression and is not simply a matter of logic or policy or analysis of statutory or documentary language, as would be the case in the type of matters indicated above, the court on appeal need not search for precedential support to overrule the contention. If the point is one for which precedent is appropriate and available, it is the obligation of appellant to cite it if he expects to prevail. We suggest that if the point is one for which it is believed that precedent for or against it is unavailable, counsel would be well advised to specifically so state under the point in question, explaining why citations are unavailable.

Here, Watson failed to cite authority for any of his points. Moreover, he failed to specify why citations were unavailable. Our review of the record indicates that authority is appropriate and available. Watson's recitation of abstract statements of the law without showing how they are related to any action or ruling of the court is not condoned. It is not our function to serve as an advocate for any party to an appeal. This is the function of counsel. In addition to it being inherently unfair to the other party to the appeal, it is unfair to parties in other cases awaiting disposition because it takes from them appellate time and resources which should be devoted to expeditious resolution of their appeals. *See Thummel v. King,* 570 S.W.2d 679, 686 (Mo. banc 1978).

For all of these reasons, the trial court's order and decree are affirmed.

GARY M. GAERTNER, P.J., and SMITH, J., concur.