**Cynthia MacDONALD, Appellant,**

v.

**J.L. SHEETS, D.D.S., Respondent.**

No. 62804.

Missouri Court of Appeals,
Eastern District,
Southern Division.

Nov. 16, 1993.

Motion for Rehearing and/or Transfer to Supreme Court Denied Dec. 16, 1993.

Application to Transfer Denied
Jan. 25, 1994.

G.H. Terando, Poplar Bluff, for appellant.

Maurice B. Graham, Fredericktown, for respondent.

CRIST, Judge.

Medical malpractice case. Plaintiff Cynthia MacDonald (Patient) appeals the entry of summary judgment for Defendant J.L. Sheets, D.D.S. (Doctor). We reverse and remand.

In early 1987, Patient consulted with an orthodontist, John N. Fox, D.D.S., regarding her overbite. Dr. Fox diagnosed Patient with severe skeletal dysplasia, where the jaw bones are misaligned to the extent orthodontia alone cannot rectify the overbite. Dr. Fox recommended Patient receive surgery to correct the dysplasia by moving the jaw bones. Patient consulted with Doctor, an oral surgeon. On August 10, 1989, Doctor performed surgery to correct the dysplasia. Doctor also performed a turbinectomy. On August 23, 1989, Patient developed a severe nose bleed. Patient lost approximately a liter to two liters of blood before being admitted to the emergency room. At the time of admission, Patient did not have a blood pressure. Bruce F. Dennison, M.D., was able to stop the bleeding by using balloon catheters in Patient's nose.

On May 22, 1991, Patient filed a two-count petition in the Circuit Court of Cape Girardeau County. In Count I, Patient alleged medical malpractice against Doctor. Patient alleged Doctor had failed to exercise the ordinary skill and care used by other oral surgeons in carelessly and negligently: (1) performing the operations described for alignment; (2) performing a turbinectomy at the same time; (3) failing to properly inform or obtain consent of Patient; (4) performing surgical procedures which he was not qualified to perform; and (5) failing to provide adequate follow-up care of Patient. In Count II, Patient alleged Doctor had breached his contract with her by misrepresenting to her the turbinectomy would allow her to breathe easier.

On September 10, 1991, Doctor filed his amended answer and counterclaim. Doctor claimed he had provided care to Patient to align her teeth and jaw and had performed a maxillary osteotomy and mandibular osteotomy. In consideration for such treatment, Doctor alleged Patient had agreed to pay the reasonable amount of his medical fees. Defendant averred Patient was indebted to him for the reasonable amount of his medical fees, $7,400, plus 2% interest per month until paid.

On May 14, 1992, Doctor filed a motion for summary judgment on his counterclaim. Doctor averred Patient had agreed to pay the reasonable amount of fees, as well as any finance charges or interest. Doctor attached a copy of a consent form signed by Patient.

On June 24, 1992, Doctor filed a motion for a protective order. Doctor averred Patient had failed to provide him with the names of all expert witnesses she planned to call at trial other than those mentioned in her interrogatory answers. Defendant asked the court to prohibit Patient from endorsing any additional expert witnesses because trial was only three weeks away.

On July 1, 1992, Doctor filed a motion for summary judgment contending Patient has failed to furnish an expert who would testify as to the standard of care and Doctor deviated from said standard. Doctor also filed a motion in limine on July 12, 1992, to limit the testimony of Dr. John Fox and Dr. Bruce Dennison to their care and treatment of Patient. Doctor argued Drs. Fox and Dennison were not qualified to testify as expert witnesses, because they had disqualified them-

**630**

selves as experts. Attached to Doctor's motion for summary judgment were portions of the depositions of Drs. Fox and Dennison.

On July 14, 1992, Patient filed her suggestions in opposition to the motion for summary judgment. Patient referred to deposition testimony of Drs. Fox and Dennison, which she alleged established the standard of care and Doctor's deviation from it.

On July 13, 1992, a hearing was held on Doctor's motion for protective order, motion in limine, and motions for summary judgment on Patient's claims and Doctor's counterclaim. On July 17, 1992, the trial court issued its order granting all four motions in favor of Doctor.

Patient appeals, alleging the trial court erred: (1) in sustaining Doctor's motion in limine, because the expert witnesses had not conceded their inability to testify to all the medical issues in controversy; (2) in sustaining Doctor's motion for summary judgment because genuine issues of material fact remained; and (3) in sustaining Doctor's motion for summary judgment on his counterclaim because genuine issues of material fact remained.

We will consider Patient's first two points together. The trial court sustained both Doctor's motion in limine and motion for summary judgment. The trial court first limited the testimony of Drs. Fox and Dennison to their respective care and treatment of Patient. It found Dr. Fox and Dr. Dennison had both conceded their inability to testify to the medical issues in controversy and were not qualified to testify to the standard of care exercised by Doctor. The trial court then granted summary judgment for Doctor, finding Patient had failed to produce qualified expert testimony regarding medical negligence.

Summary judgment is proper where Doctor has proved "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that [he] is entitled to a judgment as a matter of law." Rule 74.04(c). Doctor may meet his burden by merely showing Patient has failed to prove one of the elements of her cause of action. *ITT Commercial Finance v. Mid–Am. Marine,* 854 S.W.2d 371, 381[16] (Mo. banc 1993). In reviewing the record, we examine it in the light most favorable to Patient. *Richardson v. Rohrbaugh,* 857 S.W.2d 415, 417[1] (Mo. App.1993).

To prove her claim of medical malpractice, Patient must show Doctor's acts or omissions: (1) failed to meet the requisite standard of care; (2) were performed negligently; and (3) caused her claimed injury or condition. *Pinky v. Winer,* 674 S.W.2d 158, 160[4] (Mo.App.1984). Patient must present expert testimony to prove Doctor failed to exercise that degree of skill and care ordinarily used under the same or similar circumstances by members of his profession. *Mills v. Redington,* 736 S.W.2d 522, 524 (Mo. App.1987); *Hurlock v. Park Lane Medical Center, Inc.,* 709 S.W.2d 872, 883[16] (Mo. App.1985); *Cebula v. Benoit,* 652 S.W.2d 304, 307[3] (Mo.App.1983).

To qualify as an expert, a witness must have "knowledge, skill, experience, training, or education" so that his or her opinion will probably aid the trier of fact. § 490.065, RSMo Supp.1992; *Eichelberger v. Barnes Hosp.,* 655 S.W.2d 699, 704[1] (Mo. App.1983). This determination is within the discretion of the trial court. *Dine v. Williams,* 830 S.W.2d 453, 457[8] (Mo.App. 1992); *Eichelberger,* 655 S.W.2d at 704[2]. However, the experience and competence of a medical expert goes to the weight, not the admissibility, of his or her testimony. *Swope v. Printz,* 468 S.W.2d 34, 40[11] (Mo.1971); *See also, Lisec v. Coy,* 793 S.W.2d 173, 178[12] (Mo.App.1990). "When an expert from a particular profession is called to testify, it is not normally required that he be a specialist in a particular branch of that profession." *Hiers v. Lemley,* 834 S.W.2d 729, 733[9] (Mo. banc 1992).

We find the court erred in finding Dr. Fox and Dr. Dennison were not qualified to testify as experts. Dr. Fox received a Bachelor of Science in Chemistry from John Carroll University and his Doctor of Dental Surgery from the University of Missouri–Kansas City. He also received a Master of Science

in Orthodontics from St. Louis University. He was licensed for general practice in dentistry in Missouri. While he was not an oral surgeon, he testified he had studied oral surgery and was familiar with recommended procedures. Further, he has had a professional relationship with oral surgeons since 1980. He also stated he has worked closely with about a dozen different oral surgeons over the years and has frequently observed fixation and stabilization post-surgically. Dr. Fox is clearly qualified to testify as an expert. *See, Donjon v. Black & Decker (U.S.), Inc.,* 825 S.W.2d 31, 32[3] (Mo.App.1992).

■ In addition, Dr. Dennison is qualified to testify as an expert. He is an otolaryngologist, a medical doctor who specializes in ear, nose, and throat surgery (ENT). He received his medical degree from Medical College of Wisconsin in 1981. Although not in the dental profession, Dr. Dennison testified his training to specialize in ENT overlaps a great deal with oral surgery. The extent of his experience merely goes to the weight of his testimony, not the admissibility. *See, Swope,* 468 S.W.2d at 40[11].

The trial court further erred in finding both witnesses had conceded their inability to testify to the medical issues in controversy. The court relied upon the *Childs v. Williams,* 825 S.W.2d 4 (Mo.App.1992), where the plaintiff brought a claim for intentional infliction of emotional distress. This court found a witness had conceded his inability to testify as an expert by stating he could not testify with any medical certainty or say the plaintiff's mental problems had "medical significance." *Id.* at 10–11[7].

In the case at hand, Patient has alleged several acts of malpractice by Doctor, including malpractice: (1) during surgery; (2) in performing a turbinectomy; (3) post-surgery; and (4) in failing to obtain Patient's informed consent. We agree both experts apparently conceded their inability to testify as experts about the actual surgery. Dr. Fox stated, "I don't pretend to be a surgeon here and to be passing any type of expert witness on as a surgeon." He further stated he did not feel qualified or comfortable to come in and testify as to whether Doctor was negligent. However, those statements were made in the context of an examination regarding the actual surgery itself. Dr. Dennison also conceded he was not qualified to testify regarding the surgery, and he had no opinion of whether Doctor was negligent in the actual performance of surgery. Dr. Dennison also stated he was not qualified to discuss the "manner of fixation that was used in this procedure for the very reason the procedure is unique to oral surgery."

■ However, the witnesses did not concede their inability to testify as to *all* medical issues in controversy. In Count I, Patient had also raised questions of Patient's informed consent and Doctor's post-operative care of her, including the fixation and stabilization of Patient's jaw and the post-operative bleeding. Dr. Fox testified that based on what he had seen with other patients, he believed Doctor had not used that degree of skill and care ordinarily used by oral surgeons in fixating and stabilizing Patient's upper jaw. He further stated if Doctor failed to explain to Patient the consequences of inadequate stabilization, then Doctor was negligent. Dr. Fox also commented on the bleeding incident, testifying if Doctor failed to respond to Patient's early morning call regarding excessive bleeding, then Doctor had not exercised the degree of skill and care used by oral surgeons in same or similar circumstances. Dr. Fox further testified if Doctor had failed to adequately explain the surgical procedures to Patient, then Doctor's performance was below the standard of care.

Dr. Dennison testified he was qualified to testify regarding the post-operative bleeding. He stated if Doctor did not adequately explain the nature of the procedures or their downside risks or their normal consequences and effects, then Doctor acted below the standard of care. He further testified Doctor was negligent if he failed to post-operatively examine Patient or explain the possible consequences of inadequate stabilization. Finally, Dr. Dennison testified Doctor was negligent if the method he selected to fixate and stabilize Patient's jaw left Patient destabilized.

■ The testimony of Drs. Fox and Dennison raises genuine issues of material fact.

These issues must be decided by the jury. However, Doctor contends summary judgment would still be proper because neither Dr. Fox nor Dr. Dennison testified about causation. The record before us does reveal causation. Dr. Dennison testified that in his opinion the excessive bleeding was caused by inadequate fixation and stabilization. We find the trial court erred in granting summary judgment for Doctor on Count I.

In addition, Patient's petition contained a second count based on breach of contract. Her petition alleged Doctor had represented "the turbinectomy would make her post maxillary osteotomy and post mandibular osteotomy breathing easier. In fact, [Patient's] post maxillary osteotomy and post mandibular osteotomy breathing was not easier but, if anything, was more difficult." Patient further alleged she would not have undergone the turbinectomy absent Doctor's representation and warranty she would breathe easier.

■■■■ Even though Patient's count sounded in breach of contract, our courts have recognized allegations of improper performance of dental services are actually tort actions for malpractice. *Mullins v. Miller*, 796 S.W.2d 119, 120[1] (Mo.App.1990); *Gardner v. Robinson*, 759 S.W.2d 867, 868 (Mo. App.1988). Therefore, to prevail upon her claim of breach of contract, Patient must adduce expert testimony Doctor deviated from the standard of care in making such representations. Patient did so. Dr. Dennison testified if the turbinectomy was performed to improve the nasal airways and make Patient breathe easier, then Doctor was negligent. He further stated Doctor acted negligently if he represented to Patient the turbinectomy would improve her breathing. In her suggestions in opposition, Patient referred to her deposition where she testified Doctor told her a turbinectomy would help her breathe easier and did not discuss the complications of a turbinectomy. In light of this record, Doctor was not entitled to judgment as a matter of law on Count II as genuine issues of material fact remain.

In her final point, Patient contends the trial court erred in sustaining Doctor's motion for summary judgment on his counterclaim. Doctor filed a counterclaim against Patient for payment of his medical fees in the disputed matters. In his motion for summary judgment, Doctor attached a copy of "Informed Consent for Orthognathic Surgery" signed by Patient. The form states, "The fee for services has been explained to me and is satisfactory, and I understand there is no warranty or guarantee as to the result and/or cure and that my condition may return or become worse." Also incorporated was Doctor's affidavit, where he stated he performed oral surgery on Patient and his fees were $7,400 and such fees were proper and reasonable.

Patient responded to Doctor's motion, arguing Doctor had failed to perform the medical services in question with a degree of skill and knowledge customarily used by surgeons performing these procedures. Patient's attached affidavit averred she agreed only to pay for services that were to be rendered with the same degree of skill and knowledge customarily used by oral surgeons. She stated she did not agree to pay Doctor regardless of his level of competence. She further stated she never agreed to pay any finance charges or interest.

The trial court granted summary judgment on Doctor's counterclaim for breach of contract for payment of medical services rendered. The court found Patient had admitted receiving $7,000 in insurance proceeds for the oral surgery performed by Doctor but had never turned that money over to Doctor. The court further found Patient had agreed to pay Doctor the reasonable value of his services, which was $7,400. The court ordered Patient to pay Doctor $7,400 plus 2% interest per month from February 23, 1990, plus any post-judgment interest at the statutory rate.

As a claimant, for Doctor to be entitled to summary judgment on his counterclaim, he must prove "there is no genuine dispute as to those material facts upon which [he] would have the burden of persuasion at trial." *ITT*, 854 S.W.2d at 381[13].

■■■■ Doctor's counterclaim for payment of medical fees for services Patient contends were performed negligently may not be resolved without resolution of disputed facts in

Patient's initial claim. "[N]egligent performance of services rendered constitutes a defense to or at least a mitigation of damages in a suit for non-payment of reasonable charges for such services." *Jewish Hosp. of St. Louis v. Gaertner*, 655 S.W.2d 638, 640[3] (Mo.App.1983). Genuine issues of material fact remain regarding Doctor's alleged malpractice, Patient's consent to pay in light of alleged malpractice, and Patient's consent to pay 2% interest per month. Therefore, we reverse the trial court's decision to grant summary judgment in favor of Doctor on his counterclaim and remand for trial.

We reverse the trial court's sustaining of Doctor's motion for summary judgment and motion for summary judgment on his counterclaim. We further remand for a trial.

GARY GAERTNER, C.J., and REINHARD, J., concur.