Jeremiah W. NIXON, Attorney General
of Missouri, Plaintiff–Respondent,

v.

Allene LICHTENSTEIN and Arlene
Frazier, Defendants–
Appellants.

No. 71480.

Missouri Court of Appeals,
Eastern District,
Division Four.

Nov. 18, 1997.

Motion for Rehearing and/or Transfer to
Supreme Court Denied Jan. 8, 1998.

Application for Transfer Denied
Feb. 24, 1998.

Arthur S. Margulis, Linda K. Hogan, St. Louis, for Allene Lichtenstein.

Burton Shostak, D.J. Westling, St. Louis, for Arlene Frazier.

Jeremiah W. (Jay) Nixon, Atty. Gen., F. Martin Dajani, Asst. Atty. Gen., Jefferson City, for respondent.

HOFF, Judge.

Allene Lichtenstein and Arlene Frazier (collectively referred to as "Appellants") appeal fi~m a civil judgment against them which ordered their removal as board members of the Lichtenstein Foundation (the Corporation) and reimbursement of approximately $300,000 to the Corporation. We affirm.

This is an appeal from a judgment in a court-tried case. All evidence is viewed in the light most favorable to the trial court's decision and evidence contrary to its decision is disregarded. *Ulreich v. Kreutz*, 876 S.W.2d 726, 728 (Mo.App.E.D.1994).

The standard of review is governed by Rule 73.01(c) and *Murphy v. Carron*, 536 S.W.2d 30 (Mo. banc 1976). The judgment should be affirmed unless there is no substantial evidence to support it, it is against the weight of the evidence, it erroneously declares the law or it erroneously applies the law. *Murphy*, 536 S.W.2d at 32.

Viewed in the light most favorable to the trial court's decision, the evidence is as follows. The David B. Lichtenstein Foundation (the Foundation) was a charitable foundation created by an indenture for trust (trust indenture) executed by David B. Lichtenstein, Sr. in December 1947. The Foundation board consisted of five directors, including David B. Lichtenstein, Sr., all of whom served without compensation. The Foundation had no paid staff. In 1986 David B. Lichtenstein, Sr. died. Thereafter, Mr. Lichtenstein's sons, including Daniel Lichtenstein, ran the Foundation.

On July 15, 1987, Daniel Lichtenstein and his daughter filed a petition against Boatmen's Bank challenging the administration of David B. Lichtenstein, Sr.'s estate (Boatmen's Litigation). The Foundation was a plaintiff in the lawsuit and paid all legal fees for Daniel Lichtenstein and his daughter. On May 18, 1989, the probate court dismissed the Foundation as a plaintiff finding that it did not have an interest in the litigation. However, the Foundation continued to pay all legal fees and expenses for Daniel Lichtenstein and his daughter in the Boatmen's Litigation.

In 1990, Daniel Lichtenstein's wife, Allene Lichtenstein, was appointed to the board of the Foundation. After Allene Lichtenstein joined the board, the directors began paying themselves $12,000 each as an annual salary, the board was expanded from five members to nine members, and over $700,000 was charged to the Foundation for the purchases of personal property.

In December 1991, in accordance with the original trust indenture, Daniel Lichtenstein dissolved the Foundation and poured the assets into a nonprofit corporation, the Corporation.[1] The Corporation's articles of incorporation retained the provisions and restrictions contained in the original trust, including restrictions prohibiting self-dealing by board members and placing a cap on their compensation of five percent of the Corporation's gross income.[2] The Corpora-

---

1. The trust indenture for the Foundation provided:

 The Board of Trustees shall have power to cause a corporation to be formed under the laws of the State of Missouri and to transfer the trust estate to such corporation for the administration and effectuation of this trust, and if such corporation is formed and the trust estate so transferred to it, then all the discretions hereby conferred upon the Board of Trustees, *subject to the limitations herein written*, shall reside in the Board of Directors .... Such corporation shall be named "David B. Lichtenstein Foundation." (emphasis added).

2. Article VII of the Corporation's articles of incorporation states in relevant part, "The aggregate annual compensation to be paid the directors of the Corporation shall not exceed five percent (5%) of the annual gross income of the corporation ...." Article VIII(2) of the articles of incorporation states in relevant part, "The

tion continued to pay Daniel Lichtenstein and his daughter's expenses in the Boatmen's Litigation.

In 1992, Allene Lichtenstein's sister, Arlene Frazier, served on the Corporation's board of directors and was appointed as an administrative assistant of the Corporation. Initially, Arlene Frazier was paid $10,400 annually, but her compensation soon increased to $52,000 per year.

On January 20, 1993, Allene Lichtenstein was designated first vice president/director and was paid $120,000 per year. Soon after, a raise moved her salary to $125,000 per year.[3] Also in 1993, at the Corporation's expense, Allene Lichtenstein installed a telephone in every room in her house so that she could work at home while caring for her ill husband, Daniel Lichtenstein.

After conducting an audit of the Foundation's taxes for the years 1989, 1990, and 1991, the Internal Revenue Service (IRS) sent a letter dated September 21, 1993, to the Corporation suggesting certain changes that needed to be made in order for the Corporation to retain its tax exempt status. Specifically, the IRS letter made reference to the Boatmen's Litigation, stating:

It appears that the Foundation was making payments for 100% of the legal expense[s]. The disbursements made by the Foundation for legal expenses were not the Foundations [sic] legal obligation. The Foundation was dismissed as being a petitioner and was not considered an interested party. Any payment of legal expenses should have been made by the legal petitioners Daniel Lichtenstein and [his daughter]. . . .

Correction will need to be made. Correction will be accomplished when Daniel Lichtenstein and [his daughter] repay the Foundation all legal expenses paid for them during the years under audit.

In January 1994, Daniel Lichtenstein died. Allene Lichtenstein was the primary beneficiary of Daniel Lichtenstein's personal trust and estate. After her husband's death, Allene Lichtenstein assumed the position of

president and chief executive officer of the Corporation. No legal expenses stemming from the Boatmen's Litigation were ever reimbursed to the Corporation by Daniel Lichtenstein's personal trust, his estate, or his daughter.

On February 28, 1995, the Attorney General of Missouri filed a petition for trust accounting and a request for a temporary restraining order against the Corporation and Corporation board members Allene Lichtenstein, Arlene Frazier, Wayne Frazier, Susan Cohen, Kenneth Cohen, Bernard Chaitman, W. Stefan Morovitz, Robert Huddleston and Preben Bjerregard. The Corporation consented to the accounting. As a result of such accounting, the Attorney General filed the underlying petition alleging the Corporation board member defendants engaged in self-dealing and breached their fiduciary duties to the Corporation by: (1) paying and receiving compensation which was in excess of the five percent cap; (2) paying and receiving compensation in excess of the fair market value, if any, of services provided; (3) purchasing personal property with Corporation funds; (4) failing to collect for the Corporation Boatmen's Litigation expenses from former Corporation board members; (5) paying for personal travel with Corporation funds; (6) installing a personal phone system with Corporation funds; and (7) attempting to conceal improper personal property purchases. Seven of the nine board members entered into a settlement agreement with the Attorney General. They agreed to resign and reimburse the Corporation for fees they received in excess of the five percent cap the original trust indenture and the Corporation's articles of incorporation established.

The Attorney General's claims against Allene Lichtenstein and Arlene Frazier were tried before a court sitting without a jury. The trial court overruled Appellants' motion to strike the testimony of Holly Harber and permitted her to refer to the "1992 Wage Rate In Selected Occupations of St. Louis City and County" (St. Louis wage manual).

Corporation will not engage in any act of self-dealing. . . ."

3. In Allene Lichtenstein's previous job, she had been paid $30,000 to $35,000 per year.

In extensive Findings of Fact and Conclusions of Law filed on September 17, 1996, the trial court found Allene Lichtenstein and Arlene Frazier had engaged in acts of self-dealing, wasted assets, misused assets, and acted in a manner inconsistent with the best interests of the Corporation. The trial court also found the attorneys' fees in the Boatmen's Litigation totaled $79,787, and it was "inappropriate" for the Foundation to have paid those fees. The trial court removed Appellants as directors and officers of the Corporation, appointed three of David B. Lichtenstein, Sr.'s other relatives to the board, and ordered Appellants to reimburse the Corporation for various improper expenses. This appeal followed.

## TRUST LAW VERSUS THE BUSINESS JUDGMENT RULE

In their first point on appeal, Appellants contend the trial court erred in applying trust law principles, rather than corporate law principles, in assessing Appellants' duties to the Corporation; in concluding Appellants breached their fiduciary duties; and in denying Appellants' motion for new trial. Appellants assert the Foundation was legitimately converted into a corporation, and corporate rather than trust standards should apply. Appellants argue that applying corporate law principles, specifically the business judgment rule, would better suit their roles in the Corporation because directors of public benefit corporations have more varied responsibilities than trustees. Additionally, Appellants urge that applying the business judgment rule would effectuate the intent of David B. Lichtenstein, Sr. because he provided for the incorporation within the trust indenture. Last, Appellants contend that applying trust law sets poor precedent because it would "open the door" to applying trust law principles to any corporation that was once a trust.

■ "The business judgment rule protects the directors and officers of a corporation from liability for *intra vires* decisions within their authority made in good faith, uninfluenced by any other consideration than the honest belief that the action subserves the best interests of the corporation." *McKnight v. Midwest Eye Institute of Kansas City, Inc.*, 799 S.W.2d 909, 913 (Mo.App. W.D.1990). When a corporate director or officer's decision falls within the business judgment rule, the court will not interfere with that decision. *Id.*

■ The trial court considered this issue and determined that the stricter standard imposed on trustees is applicable here rather than the less restrictive standard under the business judgment rule. The trial court reasoned, "the fiduciary duties imposed by law on those responsible for management of property held in trust are not diminished by the transfer of those assets to a charitable corporation" (all letters in original text capitalized). We agree.

■ Contrary to Appellants' assertions, Missouri courts have not permitted directors of charitable foundations to manage charitable assets less responsibly than trustees of a charitable trust. Upon creation of a corporation from a trust provided for in a will, the corporation becomes the alter ego of the trustees and as such, the propriety of the corporate directors' acts must be determined in light of the will and must be controlled by the provisions of the decedent's will. *Hillyard v. Leonard*, 391 S.W.2d 211, 223 (Mo. 1965).

■ In this case, the Corporation's articles of incorporation retained the provisions and restrictions set forth in the trust indenture, including the prohibition against self-dealing by board members and the five percent gross income cap on board members' compensation. The trust indenture did not expressly impose a lesser fiduciary duty on the Corporation's directors. Because of these circumstances, we find no error in the trial court's application of trust law instead of the business judgment rule. We find the trial court did not err in finding that Appellants have engaged in self-dealing and have not acted in good faith or in the best interests of the Corporation. Point denied.

## BOATMEN'S LITIGATION EXPENSES

In their second point, Appellants assert the trial court erred in finding Allene Lichtenstein liable for the full amount of attorneys' fees and expenses plus interest dating

from the inception of the Boatmen's Litigation. Appellants contend that, because of this finding, the trial court also erred in denying their motion for new trial. Appellants argue Allene Lichtenstein fulfilled her fiduciary duties to the Corporation because she investigated the background of the Boatmen's Litigation, she is protected by the business judgment rule, and she could not have cured the situation in 1989 and 1990 when she was not yet a board member.

The trial court specifically addressed this issue in its Findings of Fact and Conclusions of Law. As noted by the trial court, Appellants testified they agreed the Corporation should be reimbursed, but they were waiting for the probate court in the Boatmen's Litigation to allocate the legal fees between Daniel Lichtenstein and his daughter. Appellants testified that once the probate court allocated those fees, they would attempt to collect the fees on behalf of the Corporation. The trial court acknowledged it was

> perplexed by this explanation. Since the Foundation was dismissed as a plaintiff, the probate court lacks jurisdiction over the Foundation and thus the [c]ourt's allocation is irrelevant. First, Allene Lichtenstein was the personal representative of Daniel Lichtenstein's estate, a debtor of the Foundation. Thus she should have either immediately paid the debt to the Foundation or recused herself from involvement of the Foundation with any claims against his estate by the Foundation. Second, Allene Lichtenstein was the beneficiary of Daniel Lichtenstein's estate. Again, immediate payment or recusal were the obvious and only remedies. Third, Allene Lichtenstein retained Thompson and Mitchell to represent not only the Foundation, but also Daniel Lichtenstein's estate, against whom the claim would be made and herself in other related matters. Clearly Allene Lichtenstein, as beneficiary of Daniel Lichtenstein's estate, has benefited through her lack of diligence in collecting the Boatmen's legal fees. Allene Lichtenstein should immediately reimburse the Foundation $79,787 plus interest from the time of expenditure to the Foundation. Should the probate court ever rule on legal fees, if appropriate, [Allene] Lichtenstein may seek to be reimbursed for her payment.

(footnote omitted).

"A trustee is a fiduciary of the highest order and is required to exercise a high standard of conduct and loyalty...." *Ramsey v. Boatmen's First Nat'l Bank of Kansas City, N.A.,* 914 S.W.2d 384, 387 (Mo. App. W.D.1996). "Although the trustee has many duties emanating from the fiduciary relationship, the most fundamental is the duty of loyalty...." *Id.* "Part of this duty precludes self dealing, which under most circumstances is a breach of fiduciary duty." *Id.* (footnote omitted). Here, Allene Lichtenstein, as a member of the Corporation's board of directors, owed a fiduciary duty to the Corporation to insure that the improperly paid legal fees were reimbursed. Under such duty, she should have reimbursed the Corporation for the Boatmen's Litigation fees. Therefore, the trial court did not err in requiring Allene Lichtenstein to pay the Boatmen's Litigation fees.

The trial court did not err in holding Allene Lichtenstein liable for $79,787 plus interest from the inception of the Boatmen's Litigation. Although Allene Lichtenstein was not a board member until 1990 and could not remedy the situation until then, her husband's estate was liable to the Corporation for the full amount plus interest back to the time when the Foundation made the expenditure. Because Allene Lichtenstein is the primary beneficiary of his personal trust and estate, she should have reimbursed the Corporation in the full amount plus interest from the funds she received. She could later seek contribution from her husband's daughter for any portion of the fees for which the daughter was liable.

We find no error in the trial court's Findings of Fact and Conclusions of Law on this matter. Point denied.

### EXPERT WITNESS TESTIMONY

In their third point, Appellants assert the trial court abused its discretion in overruling their motion to strike the testimony of Holly Harber (Harber) and not excluding from evi-

dence the St. Louis wage manual on which her opinion was based. Appellants contend Harber did not demonstrate expertise on the issue of compensation and her testimony was not relevant because she did not testify regarding wages paid by employers having less than five employees.

■ "An appellant must develop the contention raised in the point relied on in the argument section of the brief." *Luft v. Schoenhoff*, 935 S.W.2d 685, 687 (Mo.App. E.D. 1996). If a party does not support such contentions with relevant authority or argument beyond conclusory statements, the point is considered abandoned. *Id.* In this point, Appellants contend the trial court erred in not excluding from evidence the wage manual that Harber relied on, but they do not present any argument supporting this contention. Therefore, we consider this part of Appellants' point abandoned.

■ In order to qualify as an expert, the witness must have knowledge, skill, experience, training, or education supporting his or her opinion which is intended to aid the trier of fact. *MacDonald v. Sheets*, 867 S.W.2d 627, 630 (Mo.App. E.D.1993) (citing section 490.065 RSMo Cum.Supp.1992). "Whether a witness' qualifications to state an opinion are sufficiently established rests largely in the discretion of the trial court and its ruling will not be disturbed on appeal unless there is a clear showing of abuse." *State ex rel. Jefferson County v. Watson*, 867 S.W.2d 223, 228 (Mo.App. E.D.1993). The question the trial court must ask is whether the witness possesses certain knowledge, wisdom, or skill regarding the relevant subject matter which was acquired by study, investigation, observation, practice, or experience. *Id.* "If the witness has some qualifications, the testimony should be permitted." *Id.* Additionally, we note the extent of an expert's experience or training in a particular field goes to the weight of the testimony and does not necessarily render the testimony incompetent. *Id.*

During trial, Harber was asked, in her capacity as an expert in the area of prevailing wage determinations, to assess the typical wage for jobs like those of Appellants. Harber stated she had a master's degree in business administration and had completed graduate work in computer science and statistics. At the time of trial, she was the State of Missouri Department of Labor's wage analyst. In this capacity, her duties included collecting, interpreting, and compiling raw statistical data used for prevailing wage determinations. Harber testified she authored the St. Louis wage manual and used that manual as the basis for her opinion on Appellants' wages. Harber asserted this manual had been accepted as the authority on wage determinations for the St. Louis area by governmental agencies, state courts, the federal government and Missouri employers.

We find that Harber demonstrated sufficient knowledge, skill, and experience on which to support her opinion as an expert. Although Harber testified her manual was based on information regarding employers of five or more employees, she also testified that employers of five or less usually paid less to their employees. It was within the trial court's discretion in a bench trial to weigh the value of the expert's opinion. With this in mind, we find no abuse of discretion in the trial court allowing Harber's testimony regarding wages in the St. Louis area. Point denied.

### REMOVAL OF APPELLANTS FROM BOARD OF DIRECTORS[4]

■ In their next point, Appellants argue the trial court erred in removing them from the Corporation's board of directors. Appellants assert the trial court did not follow section 355.356 RSMo 1994 because it made no specific findings under this statute regarding Appellants' behavior. We disagree.

Section 355.356 RSMo 1994 provides:

1. The circuit court ... may remove any director of the corporation from office in a

---

4. For purposes of this appeal, this point will be addressed as the fourth point rather than the fifth, as provided in Appellants' brief.

proceeding commenced ... by ... the attorney general ... if the court finds that:

(1) The director engaged in fraudulent or dishonest conduct, or gross abuse of authority or discretion, with respect to the corporation, or a final judgment has been entered finding that the director has violated a duty set forth in sections 355.416 to 355.426; and

(2) Removal is in the best interest of the corporation.

Sections 355.416 to 355.426 RSMo 1994 concern a director's conflict of interest, the maximum amount a corporation may loan a director, and a director's liability for an unlawful distribution.

After reviewing the trial court's lengthy Findings of Fact and Conclusions of Law, we conclude the trial court made sufficient findings to comport with section 355.356 RSMo 1994. The trial court found both Appellants had grossly abused their authority and discretion as directors by voting on their own salaries and by receiving salaries in excess of the five percent cap placed by the original trust indenture and the articles of incorporation. Furthermore, the trial court determined Allene Lichtenstein grossly abused her discretion as a director of the Corporation by ignoring the conflict of interest regarding the Boatmen's Litigation.

We find no error in the trial court's order removing Appellants as directors of the Corporation. Point denied.

### *APPOINTMENT OF DIRECTORS TO BOARD* [5]

 Next, Appellants contend the trial court erred in appointing David Lichtenstein, Jr., Doris Lichtenstein, and Gayle Lichtenstein to the Corporation's board of directors, and in holding that three interim directors should continue to serve as directors. Appellants assert the trial court had no authority to make such appointments because it did not follow section 355.361 RSMo 1994, which sets forth the method for appointing directors of a not-for-profit corporation.

Section 355.361 RSMo 1994 states that the directors remaining on a corporate board may fill board vacancies by the vote of a quorum and, if fewer than a quorum exists, by a majority vote of the remaining directors. At the time the trial court entered judgment, no directors remained on the Corporation's board. Out of the original nine directors, seven had resigned upon settlement of the Attorney General's claims against them. Appellants were the remaining two directors who were removed from the board by the trial court's order. Thus, section 355.361 RSMo 1994 is not dispositive.

Section 355.726.1(2)(e) RSMo 1994 permits a trial court to dissolve a public benefit corporation when the corporation "is no longer able to carry out its purposes." Because there were no remaining directors, the Corporation was clearly unable to carry out its purposes because three directors are needed at all times. Section 355.321 RSMo 1994. However, "[p]rior to dissolving a corporation, the court shall consider whether ... [t]here are reasonable alternatives to dissolution." Section 355.726.2(1) RSMo 1994.

In *Whan v. Whan*, 542 S.W.2d 7 (Mo.App. E.D.1976), this Court reviewed the trial court appointment of trustees when no trustees remained to administer a trust. This Court concluded that

[a] trust will not be permitted to fail because the trustee named in the instrument creating it cannot administer the trust. A court of equity will appoint a new trustee. Having found that the agreement created a trust and that the trustees must be removed, the court was under an obligation to appoint a new trustee to avoid the failure of the trust.

*Id.* at 12 (citation omitted).

Because the Corporation was formed from a charitable trust, and the trial court has the responsibility of considering reasonable alternatives to the dissolution of a corporation, we find the trial court did not err in appointing three Lichtenstein family members to serve as directors and retaining three interim di-

---

**5.** For purposes of this appeal, this point will be addressed as the fifth point rather than the fourth, as provided in Appellants' brief.

rectors who had been appointed to serve while there were no directors. Point denied.

### TELEPHONE SYSTEM

■ In their sixth point, Appellants assert the trial court erred in holding Allene Lichtenstein liable for the cost of installing a $10,000 telephone system in the Lichtenstein home. Appellants contend the Attorney General failed to establish by sufficient evidence that this expense was improperly charged to the Corporation. Appellants also argue the trial court made no finding that Allene Lichtenstein breached any fiduciary duty with respect to the telephone system.

We restate that in a court-tried case, the judgment of the trial court will be sustained on appeal unless there is no substantial evidence to support it, it is against the weight of the evidence, or it erroneously declares or applies the law. *Murphy*, 536 S.W.2d at 32. In a court-tried case, where the trial court makes no findings of fact with respect to a particular issue, we resolve all fact issues in accordance with the trial court's judgment and will affirm it if it can be supported on any theory of law in accordance with the evidence. *Kirktown Homes Ass'n v. Arey*, 812 S.W.2d 198, 199 (Mo.App. W.D.1991) (citing Rule 73.01(a)(2)).

After considering the evidence regarding the telephone system introduced at trial, the trial court concluded it was an improper expense. The cost of the telephone system was approximately $10,000 because a telephone was placed in almost every room of the nine thousand square foot Lichtenstein home. We conclude there is substantial evidence in the record to support the trial court's finding that this expenditure was a breach of Allene Lichtenstein's fiduciary duty to the Corporation.[6] No error of law exists. Point denied.

Judgment affirmed.

ROBERT G. DOWD, Jr., P.J. and SIMON, J., concur.

---

**6.** The trial court amended its September 17, 1996 Judgment and Order by crediting Allene Lichtenstein the $4,940 she has reimbursed the Foundation for these telephone expenses.