**In re the ESTATE OF Merrill W. CHRISMAN.**

No. 53226.

Missouri Court of Appeals, Eastern District, Division Four.

March 1, 1988.

Biggs & Hensley, Ward Fickie, Davis Biggs, Jr., St. Louis, for appellant.

M. Harvey Pines, Schramm & Pines, St. Louis, for respondent.

John W. Howald, Thurman, Smith, Howald, Weber & Bowles, Hillsboro, for Larry A. Church, Acting Successor Personal Representative, for respondent.

SIMON, Presiding Judge.

Appeal by petitioner, Jack Hannebaum, a contingent remainderman under a residuary trust established by the last will and testament of his uncle, Merrill W. Chrisman (decedent), from an order involving an "accounting" by Ruth L. Chrisman, a co-personal representative of decedent's estate, entered April 20, 1987, in the Circuit Court of Jefferson County. On appeal, petitioner avers that the trial court erred: (1) in finding Ruth L. Chrisman, decedent's surviving spouse, and co-personal representative and co-trustee under decedent's will, subject to a surcharge of $7,240.00 for the unreasonable retention of improper estate investments because said finding arbitrarily reduced her joint and several liability on improper investments inventoried at $14,480.00; (2) "in finding [Ruth L.] Chrisman purchased 100 shares of American Express Company and 100 shares of Toys-R-Us on August 2, 1983, with her personal funds"; and, (3) "in failing to surcharge [Ruth L.] Chrisman for the total of funds designated as 'unidentified withdrawals' and with the sum of $15,000.00 which disappeared without explanation."

The history of the instant case is extraordinary to say the least and requires a somewhat detailed account. Decedent died testate on September 22, 1979. Now, eight and one-half years later, the record indicates that there has been no final settlement of the estate.

In September, 1984, petitioner retained counsel and filed motions to compel final settlement and to remove Mrs. Chrisman and William H. Wisbrock as personal representatives of decedent's estate and as trustees of a marital trust and a residuary trust established by decedent's will. At that time, probate court records indicated the co-personal representatives had not filed any settlements since the grant of letters testamentary on October 15, 1979. The trial court ordered that annual settlements for 1984 and the preceding four years be filed on various dates throughout October, 1984, but no settlements were filed. Upon petitioner's motion to compel compliance, the trial court then ordered the settlements filed by November 19, 1984. The settlements were filed on that date, and first amended settlements were filed December 18, 1984. Petitioner took exception to the amended settlements.

On June 5, 1985, after extended skirmishing between the parties, a hearing was conducted on petitioner's motions. Following the hearing, the trial court issued extensive findings of fact, conclusions of law, and orders. The trial court found numerous incidents of mismanagement on the part of Mrs. Chrisman and Mr. Wisbrock. The trial court removed Mrs. Chrisman and Mr. Wisbrock as personal representatives of the estate, removed Mrs. Chrisman as co-trustee of the marital and the residuary trusts, and accepted Mr. Wisbrock's resignation as co-trustee of both trusts. It surcharged Mrs. Chrisman individually the sum of $359,495.44; Mr. Wisbrock, $96,687.85; and Mrs. Chrisman and Mr. Wisbrock $11,375.10, jointly and severally. The trial court appointed Jefferson County Public Administrator Larry A. Church the successor personal representative. No appeal was taken from these orders. Apparently, Mrs. Chrisman paid the entire joint surcharge of $11,375.10 and has satisfied the $359,495.44 surcharge. Mr. Wisbrock, however, offered to pay the estate $40,000.00 in settlement of his liability. After an inquiry into Mr. Wisbrock's finances, the trial court, referring to Mr. Wisbrock as personally insolvent and judgment proof, entered an order permitting the successor personal representative to accept the $40,000.00 settlement by Mr. Wisbrock,

and providing that one-half of the $11,-375.10 surcharge, plus interest, be returned to Mrs. Chrisman. Again, no appeal was taken from this order.

In addition to the aforementioned orders, the trial court imposed a resulting trust upon all stocks, bonds, mutual funds, unit trusts, money market funds or like investments purchased by Ruth L. Chrisman since September 22, 1979, the date of decedent's death, together with any and all interest, dividends, capital distributions, or other payments on account of a beneficial interest in any of the foregoing investments. The trial court further ordered that Mrs. Chrisman render an accounting of all the foregoing assets on or before September 30, 1985, to insure the payment of surcharges.

On March 6, 1986, Larry Church, successor personal representative, filed a motion to have Mrs. Chrisman cited for contempt for her failure to file the accounting. The trial court entered a compliance order on March 13, 1986, establishing April 10, 1986, as the compliance date. Compliance was not had until May 7, 1986, when Mrs. Chrisman filed hundreds of pages of monthly bank statements, check registers, brokerage house monthly statements, and pass book records. Petitioner filed suggestions in opposition to the "accounting." A hearing held on December 17, 1986, on the accounting issue resulted in new findings, conclusions, and orders issued by the trial court on April 20, 1987.

The trial court found that the documents filed with the court by Mrs. Chrisman did not constitute a full and complete accounting and that a complete accounting was impossible because the personal representatives (Mrs. Chrisman & Mr. Wisbrock) did not keep adequate records. The trial court found, however, that the records were "sufficient to enable the court to reach a just resolution of most of the issues yet remaining." The trial court concluded that the records tended to show that Mrs. Chrisman had commingled estate funds with her personal funds and that the records did allow for some tracing.

At the time of his death, Merrill Chrisman owned ten units each of MGF 78 and MGF 79, interests in a limited partnership acquired as tax shelters. The estate inventory value of the units was $14,480.00. As of December, 1986, the value of the units was $1322.00. Petitioner sought to have this decrease in value restored to the estate. The court entered an order surcharging Ruth Chrisman for one-half of the inventory value of the units, or $7,240.00, in exchange for ownership of the units, and designated such order final for purposes of appeal.

The court also found that Ruth Chrisman had commingled $20,000.00 of the estate's funds with her personal funds. The $20,-000.00 was deposited in her personal bank account, and she purchased various shares of stock of American Express Co., Sears, and Toys-R-Us through her brokerage firm on August 2, 1983. It should be noted that the account in question had many other transactions as well. The court found that Ruth Chrisman had purchased the American Express stock and the Toys-R-Us stock with funds traceable to her personal funds and that the Sears stock was purchased with commingled funds.

The trial court made no findings with respect to withdrawals from various personal accounts of Mrs. Chrisman and estate accounts. These withdrawals are designated on the monthly account summaries only as "unidentified withdrawals." Nor did the trial court make findings with respect to $15,000.00 which was not finally accounted for.

In his first point, petitioner maintains that the trial court erred in ordering Mrs. Chrisman subject to a surcharge of $7,240.00 for the improper retention of the MGF 78 and MGF 79 investments because in so doing, the trial court arbitrarily reduced her joint and several liability on the investments which were inventoried at $14,480.00. As noted, this order has been designated final for purposes of appeal.

Following the December 17, 1986 hearing on the accounting issue, the trial court found:

9. That the 10 units MGF 78 and 10 units MGF 79 had a value as of the date of inventory of the estate's assets of $14,480.00 and as of 12–15–86 a maximum value of $1,322.00.

10. That said MGF partnership units were not properly retained by the estate, as said assets were highly speculative, and were originally acquired by the decedent as tax shelters; and [Mrs. Chrisman] should be surcharged an amount to compensate the estate for the loss occasioned by the improper retention of said assets.

11. Said surcharge should be the sum of $7,240.00, as against [Mrs. Chrisman], being one-half of the original value of said assets.

The trial court determined, with respect to th MGF investments, that:

[t]he proper course is to surcharge the loss of value to those fiduciaries who held them improperly. Since the estate has heretofore concluded a settlement against WISBROCK (due to his personal insolvent and judgment proof position), this Court has deemed that the just course of action is to surcharge [Mrs. Chrisman] with one-half the original inventory value of said investments, and order them turned over to her to salvage from them whatever value they may have.

Based on the foregoing determination, the trial court ordered:

7. Ruth L. Chrisman is hereby surcharged in the amount of $7,240.00 as set forth in Finding No. 11 hereinabove. Upon payment of said amount to Larry A. Church he shall give her his receipt therefor. Upon presentation of said receipt to the successor Trustee appointed by this Court, to wit: The Boatmen's National Bank, said trustee shall transfer to Ruth L. Chrisman the beneficial ownership interest in the 10 units MGF 1978 Limited and the 10 units MGF 1979 Limited received by Boatmen's on May 30, 1986. Ruth L. Chrisman shall give Boatmen's her receipt therefor.

It has long been understood that a personal representative under a will serves in a fiduciary capacity. The personal representative stands in the position of a trustee to those interested in the estate that he or she administers and is liable for want of due care and skill in the management of the estate, measured by the care and skill a prudent person would exercise in the direction and management of his or her own affairs. *Merritt v. Merritt,* 62 Mo. 150, 157 (1876). It is the personal representative's duty to look after the interests and to act for and on behalf of all persons who have an interest, immediate or remote, in the estate. *Kahmann v. Buck,* 446 S.W.2d 457, 460 (Mo.App.1969).

The parties have not cited, nor has our research uncovered, any Missouri cases in which joint and several liability of co-personal representatives has been discussed. Cases from other jurisdictions and the legal encyclopedias, however, set forth some general principles. As a general rule, co-personal representatives are jointly and severally liable if they act together or one approves or acquiesces in the improper conduct of the other. *See Matter of Estate of Bartlett,* 680 P.2d 369, 379 (Okla.1984). *See also, Jose v. Lyman,* 316 Mass. 271, 55 N.E.2d 433, 439 (1944); *In re Tolfree's Estate,* 347 Mich. 272, 79 N.W.2d 629, 637 (1956); *Brown v. Fidelity Union Trust Co.,* 135 N.J.Eq. 404, 39 A.2d 120, 129 (1944); *Parker v. Rogerson,* 33 A.D.2d 284, 307 N.Y.S.2d 986, 992 (1970). "[W]here all co-[personal representatives] are chargeable with the same wrongful act or omission, they may be held jointly and severally liable." 31 Am.Jur.2d *Executors and Administrators,* § 629 (1967); 34 C.J.S. *Executors and Administrators,* § 1045 (1942).

As noted, a personal representative serves in a fiduciary capacity and stands in the position of a trustee with respect to those interested in the estate. In Missouri it has been held that where co-trustees have concurred in a breach of trust they are jointly and severally liable. *Denny v. Guyton,* 331 Mo. 1115, 57 S.W.2d 415, 433 (1932), *cert. denied,* 289 U.S. 738, 53 S.Ct. 657, 77 L.Ed. 1486 (1933). Quoting from 3 J. Pomeroy, Equity Jurisprudence § 1081 (4th ed. 1918), the *Denny* court stated:

The rule is firmly settled that where a breach of trust has affected two or more or all of co-trustees with a common liability, they are liable jointly and severally; each is liable for the whole loss sustained or the whole amount due, and a decree obtained against them jointly may be enforced against any one of them.

*Denny,* 57 S.W.2d at 433. So too it is stated in *Walker v. James,* 337 Mo. 750, 85 S.W.2d 876 (1935), that:

While a trustee is generally not responsible for the acts or defaults—the intentional or negligent breaches of trust—of a cotrustee, in which he has not joined or concurred, or to which he has not consented, or which he has not aided or made possible by his own negligence, "A trustee is responsible for the willful or negligent wrongful acts or omissions—breaches of trust—of his cotrustee to which he consented, or which by his own negligence he made it possible for his cotrustee to commit."

*Id.* 85 S.W.2d at 884 (quoting 3 J. Pomeroy, Equity Jurisprudence § 1082 (4th ed. 1918)). *See Morrison v. Asher,* 361 S.W.2d 844, 852 (Mo.App.1962) (where trustee acted in concert, or at least the acts of one were acquiesced in by the other, both trustees must bear the responsibility of the acts, or failure to act, of each). *See also* G. Bogert, Trusts and Trustees §§ 701, 862 (2nd ed. rev. 1982); 3 Scott on Trusts § 224.6 (4th ed. 1988).

■ We see no logical reason why the law pertaining to joint and several liability of co-trustees should not be extended to co-personal representatives. Each occupy a position of trust and serve in a fiduciary capacity for the beneficial interests of others. We find that the Restatement (Second) of Trusts should serve as a guide in determining the liability of co-personal representatives.

(1) Except as stated in Subsection (2), a trustee is not liable to the beneficiary for a breach of trust committed by a co-trustee.

(2) A trustee is liable to the beneficiary, if he

(a) participates in a breach of trust committed by his co-trustee; or

(b) improperly delegates the administration of the trust to his co-trustee; or

(c) approves or acquiesces in or conceals a breach of trust committed by his co-trustee; or

(d) by his failure to exercise reasonable care in the administration of the trust has enabled his co-trustee to commit a breach of trust; or

(e) neglects to take proper steps to compel his co-trustee to redress a breach of trust.

Restatement (Second) of Trusts § 224 (1959). Comment a. under § 224 provides that:

Where several trustees are liable for a breach of trust committed by them jointly or for a breach of trust committed by one of them for which the others are liable under the rule stated in Subsection (2), they are jointly and severally liable to the beneficiary for the breach of trust.

In the instant case, Mrs. Chrisman does not complain about her liability, only the extent of it. She maintains that her liability should not exceed what the trial court has already declared because "she was not familiar with probate procedure and the duties and obligations of [personal representatives]," and because she "deferred to the decisions of [Mr.] Wisbrock, her [corepresentative] on matters of estate management" and the decision to retain the MGF investments was his. In its findings of August 19, 1985, the trial court found:

[t]hat [Mrs. Chrisman] through her working career with various radio stations and in a talent agency business, and as evidenced by the shrewd nature of her investment of funds received as "encroachments" on the trust principals, as well as attention to dates income from estate assets were due and promptly requesting Wisbrock to forward same to her, [Mrs. Chrisman] has demonstrated considerable business accumen. [sic]

. . . . .

That [Mrs. Chrisman] received bank statements from the estate account and knew when dividends and interest were

due on estate assets, and that she requested all distributions to her over and above the income; and consequently [Mrs. Chrisman] was aware on a day to day basis the financial condition and assets of the estate. [Mrs. Chrisman] relied upon Shechter and Wisbrock to advise and guide her in probate affairs, although she did actively participate in some respects.

 We conclude that under the foregoing principles, Mrs. Chrisman is as responsible as Mr. Wisbrock for the mismanagement of decedent's estate in improperly retaining the MGF investments. As the trial court found, Mrs. Chrisman has considerable business acumen and "was aware on a day to day basis [of] the financial condition of the assets of the estate." Both representatives are equally responsible for the proper and prompt administration of their decedent's estate. Each owes to the other a reciprocal obligation to do his or her duty and to see that his or her associate meets his or her obligation. *Tilghman v. Frazer,* 198 Md. 250, 81 A.2d 627, 630 (1951). *See Mercantile–Safe Deposit and Trust Company v. Hearn,* 62 Md.App. 39, 488 A.2d 202, 207 (1985). The trial court erred in seeking to apportion the liability for the mismanagement of the estate between Mrs. Chrisman and the estate. The estate should not be called upon to help shoulder the loss caused by its mismanagement. Regardless of the compromise settlement by Mr. Wisbrock with the estate, Mrs. Chrisman, nevertheless, remains jointly and severally liable. Of course, Mrs. Chrisman may be entitled to seek contribution from Mr. Wisbrock because a co-fiduciary who is obliged to pay more than his proportionate share of the damage may have a cause of action for contribution against his co-fiduciaries who are equally or more guilty than he. Annot., 66 A.L.R. 1147 (1930). Thus, the order must be reversed and remanded for further proceedings in accordance with this opinion.

Mrs. Chrisman also argues that petitioner acquiesced in the surcharge of $7,240.00 by the trial court and is now precluded from arguing error on appeal. However, a careful review of the transcript of the hearing conducted on the "accounting" issue reveals that petitioner preserved his right of appeal. We find no merit in Mrs. Chrisman's argument.

In his second point, petitioner claims that "[t]he trial court erred in finding Mrs. Chrisman purchased 100 shares of American Express Company and 100 shares of Toys–R–Us on August 2, 1983, with her personal funds." In his third point, petitioner claims that "[t]he trial court erred in failing to surcharge Mrs. Chrisman for the total of funds designated as 'unidentified withdrawals' and with the sum of $15,-000.00 which disappeared without explanation."

 At the outset we note that these points fail to comply with the mandate of Rule 84.04(d). Petitioner's points two and three contain no reference to and do not state wherein and why the trial court's actions are claimed to be erroneous. There is no question petitioner's failure to comply with this rule is grounds for dismissal. *Estate of Groeper v. Groeper,* 665 S.W.2d 367, 368 (Mo.App.1984). However, because we find that there has been no final judgment with respect to the issues raised in points two and three, we dismiss without prejudice those points for that reason.

It is important to note that in regard to all stocks held by Mrs. Chrisman, including the American Express and the Toys–R–Us shares, she was directed by the trial court in its April 20, 1987 order to provide the court with a written certification from her stockbroker containing the number of shares she held and other identifying information and to deposit with the clerk all stock certificates of ownership in her possession. The court further ordered that upon receipt of the foregoing, an evaluation of the capital gains (or losses) will be made in order to calculate additional surcharges due the estate. It is true that the trial court found that the American Express and the Toys–R–Us shares were purchased by Mrs. Chrisman with personal funds. However, no order directing a sur-

charge with respect to the aforementioned stocks including American Express and Toys–R–Us, has been made. The trial court is not bound by its finding and may reconsider the same once it has all the pertinent information before it. *In the Matter of Little Chariton Drainage District*, 555 S.W.2d 77, 79 (Mo.App.1977). The same is true with respect to the findings concerning "unidentified withdrawals" and the $15,000.00 unaccounted for. Thus, because all of the issues with respect to points two and three have not been finally disposed of by the trial court, the appeal as to those issues must be dismissed without prejudice as premature. *Hill v. Boles*, 583 S.W.2d 141 (Mo. banc 1979). Nothing contained herein should be construed as approving or disapproving the actions of the trial court with respect to the allegations of error asserted in points two and three.

Reversed and remanded in part and dismissed in part.

CRANDALL and GRIMM, JJ., concur.