Imogene Hoit RAMSEY, Respondent,

v.

**BOATMEN'S FIRST NATIONAL BANK OF KANSAS CITY, N.A., Boatmen's Trust Co., Appellants.**

No. WD 50518.

Missouri Court of Appeals, Western District.

Jan. 23, 1996.

Timothy K. McNamara, Maurice J. O'Sullivan, Jr., Mary Beth Clune, Lathrop & Norquist, L.C., Kansas City, for appellants.

Walter R. Simpson, Donald F. McDonald, Jr., Sanders & Simpson, P.C., Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and ULRICH and LAURA DENVIR STITH, JJ.

ULRICH, Judge.

Boatmen's First National Bank of Kansas City, N.A., (bank) and Boatmen's Trust Com-

pany (collectively Boatmen's) appeal the trial court's finding, that, following the court tried case, Imogene Hoit Ramsey was entitled to judgment against Boatmen's for breach of trust and common law negligence as co-trustee of the Imogene Hoit Campbell Trust. Boatmen's claims that the court erred in granting judgment to Ms. Ramsey on three grounds: 1) she had consented to the challenged transactions; 2) she directed the transactions; and 3) she ratified the transactions. Boatmen's also alleges error in the trial court's assessment of damages. The trial court did not offset gains realized by investments of trust funds against losses incurred by investments. Boatmen's claims that losses resulted due to a single Boatmen's policy and not as a result of separate distinct acts which permits offsetting investment gains against investment losses.

The judgment is affirmed in part, reversed in part, and the case is remanded for determination of damages in accordance with this opinion.

Imogene Hoit Ramsey is the grantor/beneficiary of the Imogene Hoit Campbell Trust. She is 92 years old and has had no training in financial matters. She has relied on others to help conduct her financial affairs throughout her life. Boatmen's or Boatmen's predecessors have been trustee or co-trustee since the inception of the trust in 1951. From 1955 to the time of his death in 1968, Ms. Ramsey's husband, J.W. Ramsey, was co-trustee. In 1976 the trust was amended to name S. Hoit Campbell, Ms. Ramsey's son, co-trustee with Boatmen's. The amended revocable trust agreement contained the following provisions:

*Third.* During her lifetime, grantor shall have the absolute right to withdraw from the trust estate any part of the property held in trust hereunder, and promptly on receipt of such notice of withdrawal in writing signed by the grantor, the trustees shall deliver that part of the trust estate to grantor.

*Fourth.* During her lifetime, grantor may at any time, and from time to time by instrument in writing, signed by her and delivered to the trustee, modify alter, terminate, amend, change and revoke either in whole or in part the terms and provisions of this trust agreement.

*Fifth.* The trustee may retain any property deposited with it by the grantor, and shall have the right to purchase investments of any kind or character, regardless of whether such investments shall constitute what are known as legal investments in the State of Missouri, and such trustee shall have full authority and power to purchase and sell common and preferred stock, corporation bonds, regardless of rating, and any other real or personal property which said trustee may deem desirable at the time funds are available ...

*Sixth.* The trustee is hereby authorized to sell or exchange any of the trust securities or trust property to manage, invest, reinvest and administer the trust estate provided, however, that the trustee shall, during the grantor's lifetime and ability to act for herself, secure the grantor's prior written approval to the sales, exchanges, investments and reinvestments in the trust estate.

While Mr. Ramsey was alive, Ms. Ramsey authorized him to discuss her financial affairs with Boatmen's. When Hoit Campbell became co-trustee, he assumed the role of Ms. Ramsey's financial advisor. Mr. Campbell advised his mother to invest in real estate investments in which he was involved, and his mother directed Boatmen's to invest trust assets in these ventures. These real estate investments included limited partnerships with real estate holdings. Ms. Ramsey did not understand what a real estate limited partnership entailed, but her son enjoyed her confidence. Over the years, she made numerous written approvals of trust transactions. As a result of these investments, the trust portfolio changed from a mix of mostly blue chip stocks, bonds and government securities to a substantial percentage of the trust holding interest in real estate limited partnerships and owning Hoit Campbell's promissory notes.

In total, through the years of 1975–1990 the trust invested in twelve different real estate limited partnerships syndicated by Hoit Campbell. Five of these were purchased from the Florence Hoit Trust, anoth-

er trust in which Boatmen's was trustee. Boatmen's had insisted on the sale of the five limited partnerships from that trust because Boatmen's considered the limited partnership interests unacceptable investments.

Mr. Campbell stated that he made the decisions regarding the investments of trust assets. When advising his mother to authorize particular investments, Mr. Campbell did not fully explain them but only gave her information he thought she could understand. He did not advise her as to alternative investments or potential hazards of the investments. He merely presented her with a proposed investment and had her sign an authorization which he provided. In addition to purchasing limited partnership interests, cash from trust assets was periodically infused into the limited partnerships to keep them viable. Boatmen's merely did as requested by the trust beneficiary via Mr. Campbell without communicating with Ms. Ramsey about the investments.

The trust also made substantial loans to Mr. Campbell. In 1984 an unsecured note executed by Hoit Campbell was transferred into the trust. No attempts were made at any time to enforce payment. During the life of the trust, Hoit Campbell personally borrowed from the trust approximately $155,000 in the form of unsecured loans. Loans to Mr. Campbell continued from trust assets even after Boatmen's was informed by the bank's commercial department of significant problems the bank was experiencing with personal loans to Mr. Campbell. Mr. Campbell eventually filed bankruptcy discharging the notes held by the trust.

Evidence was presented that the trust funds used to finance the limited partnerships and the loans to Mr. Campbell would have accumulated at a minimum of 9% interest compounded monthly to approximately $571,777.00.

## I.

Boatmen's claims as its first point on appeal that the trial court erred in entering judgment against Boatmen's for breach of trust and common law negligence. Boatmen's claim of error is premised on the contention that Ms. Ramsey consented to, directed, or ratified the challenged trust transactions and, therefore, is precluded from holding Boatmen's liable as trustee.

A trustee is a fiduciary of the highest order and is required to exercise a high standard of conduct and loyalty in administration of the trust. *Morrison v. Asher,* 361 S.W.2d 844, 850 (Mo.App.1962). Although the trustee has many duties emanating from the fiduciary relationship, the most fundamental is the duty of loyalty. As part of this duty the trustee is to administer the trust solely in the interest of the beneficiary. Restatement (Second) of Trusts Section 170. Part of this duty precludes self dealing, which under most circumstances is a breach of the fiduciary duty.[1]

An exception to this rule exists when a competent beneficiary who has full knowledge of the facts and his legal rights consents to a transaction and cannot thereafter seek redress against the trustee even though the transaction would otherwise be a breach of trust. *Scullin v. Clark,* 242 S.W.2d 542, 548 (Mo. banc 1951). Section 216 Restatement (Second) of Trusts provides that:

> [t]he consent of the beneficiary does not preclude him holding the trustee liable for a breach of trust, if
>
> . . .
>
> (b) the beneficiary, when he gave his consent, did not know of his rights and of the material facts which the trustee knew or should have known and which the trustee did not reasonably believe that the beneficiary knew; or
>
> (c) the consent of the beneficiary was induced by improper conduct of the trustee.

The key factor in precluding the beneficiary from holding the trustee liable is the beneficiary's full knowledge of his legal rights and all material facts.

---

1. The trustee violates his duty to the beneficiary where he has a personal interest in the purchase by the trust of a substantial nature that might affect his judgment. Restatement (Second) Trusts Section 170, cmt c.

In this situation Boatmen's never discussed with Ms. Ramsey the various investments and loans that were being made to Hoit Campbell, although her son was a co-trustee. When a transaction involves a trustee, it must be fair and open, and consent must be informed with all parties holding equal knowledge of material facts and rights and otherwise free of influence. *Gross v. Gross*, 625 S.W.2d 655, 663 (Mo.App.1981).

"It is the duty of a trustee to fully inform the cestui que trust of all facts relating to the subject matter of the trust which come to the knowledge of the trustee and which are material for the cestui que trust to know for the protection of his interests." *In re Dryden's Estate*, 155 Neb. 552, 52 N.W.2d 737 (1952) *quoting Rettinger v. Pierpont*, 145 Neb. 161, 15 N.W.2d 393, 412 (1944). *See* Restatement of Trusts 2nd Section 173.[2]

In this case Boatmen's had at the minimum a duty as a trustee to advise Ms. Ramsey of the conflict of interest created by investing in a co-trustee's ventures and in making the loans to Hoit Campbell. Boatmen's also should have ensured that Ms. Ramsey was deciding to make these investments with adequate knowledge of the facts and surrounding circumstances. Boatmen's had a policy of not investing in limited partnerships of this kind because Boatmen's considered such investments nonquality investments for trusts. This policy should have been directly communicated to Ms. Ramsey by co-trustee Boatmen's.

Boatmen's could not rely solely on Hoit Campbell as co–trustee to properly administer the trust. A co-trustee cannot delegate the administration of the trust to a single trustee. "If there are several trustees, each trustee is under a duty to the beneficiary to participate in the administration of the trust and to use reasonable care to prevent a co-trustee from committing a breach of trust or to compel a co-trustee to redress a breach of trust." Restatement (Second) of Trusts Section 184. A co-trustee does not escape liability by failure to participate in the administration of the trust. See Section 456.540 RSMo (1994). In *In re Estate of Chrisman*, 746 S.W.2d 131 (Mo.App. 1988), the court noted that a trustee is responsible for "omissions—breaches of trust— of his cotrustee to which he consented, or which by his own negligence he made possible for his cotrustee to commit." *Id.* at 135 quoting *Walker v. James*, 337 Mo. 750, 85 S.W.2d 876, 884 (1935).

In *Morrison v. Asher*, 361 S.W.2d 844 (Mo.App.1962), the court found that where one co-trustee acquiesced in the improper acts of the other co-trustee, both trustees must bear the responsibility of the acts, or failure to act, of each. *Id.* at 852. The court in *In re Estate of Chrisman* found that Restatement (Second) of Trusts provided a guide to determining the liability of co-personal representatives of trusts. *In re Estate of Chrisman*, 746 S.W.2d at 135. The court noted that although a trustee is not normally liable to the beneficiary for a breach of trust committed by a co-trustee, one of several exceptions occurs when a trustee approves or acquiesces in or conceals a breach of trust committed by his co-trustee or fails to exercise reasonable care in the administration of the trust, thereby enabling his co-trustee to commit a breach of trust. *Id.*

When the trust was first created, the grantor chose Boatmen's predecessor as trustee. As a corporate trustee, a bank is generally chosen for objectivity and expertise. A bank cannot take a passive role in the administration of the trust for which it accepted a fiduciary responsibility as a trustee. If the trustee were obligated to merely do as instructed by a co–trustee, the role of trustee would be diminished to conduct less than that expected of a fiduciary.[3] Ms. Ram-

---

**2.** The trustee, even if not dealing with the beneficiary on the trustee's own account, is under a duty to communicate to the beneficiary material facts affecting the interest of the beneficiary which the trustee knows the beneficiary does not know and which the beneficiary needs to know for his protection in dealing with another person with respect to his interest. Restatement (Second) Section 173 cmt. d.

**3.** Judge Cardozo once wrote "Uncompromising rigidity has been the attitude of courts of equity when petitioned to undermine the rule of undivided loyalty by the disintegrating erosion of particular exceptions. Only thus has the level of

sey was relying on Boatmen's expertise and objectivity to care for her interest in the trust. The ultimate beneficiary, not a co-trustee, of a revocable trust directs the actions of the trustee, who must comply. *Firstier Bank, N.A. v. Zeller,* 16 F.3d 907, 912 (8th Cir.1994) *cert. denied* —— U.S. ——, 115 S.Ct. 194, 130 L.Ed.2d 126 (1994). Boatmen's was obligated to inquire of Ms. Ramsey whether she desired to make transactions that involved co-trustee Hoit Campbell after Boatmen's communicated to her its expert opinion of the nature of the proposed investments and their potential ramifications. This is especially true because the investments at the co-trustee's directions to Boatmen's in behalf of the trust beneficiary benefited the co-trustee. In acquiescing to Mr. Campbell's actions without first communicating with Ms. Ramsey to determine that she understood the nature of the investments, Boatmen's opinion on the advisability of the investments, the conflict of interest created by her son/co-trustee benefiting from the investments, and the risks involved with these type of investments, Boatmen's did not fulfill its fiduciary responsibility.

Point I is denied.

## II.

Boatmen's claims in its second point on appeal that the trial court erred in assessing liability against the co-trustee appellants without offsetting gains against losses incurred by the trust. Restatement (Second) of Trusts Section 213 states:

> A trustee who is liable for a loss occasioned by one breach of trust cannot reduce the amount of his liability by deducting the amount of a gain which has accrued through another and distinct breach of trust; but if the two breaches of trust are not distinct, the trustee is accountable only for the net gain or chargeable only with the net loss resulting therefrom.

*See Vest v. Bialson,* 365 Mo. 1103, 293 S.W.2d 369, 379 (banc 1956).

██ The critical determination is whether breaches of trust are separate and dis-

tinct. The comments to the above section of the restatement set forth seven factors to be considered in determining whether breaches of trust are distinct: 1) whether the breaches relate to the same or different parts of the trust property; 2) whether the breaches arise out of successive dealings; 3) the amount of time elapsing between the breaches; 4) whether there has been an intervening accounting between the breaches; 5) how the trustee has dealt with the property between breaches; 6) whether there was an intent to breach the trust; 7) whether the breaches are the result of a single policy on the part of the trustee. Restatement (Second) of Trusts section 213, cmt. e.

██ When the breaches of trust relate to different parts of the trust property, they are more likely to be distinct than where the breaches relate to the same property or its product. *Id.* The use of the "offsetting theory" is appropriate when the investments are related. *Matter of Estate of Bartlett,* 680 P.2d 369, 375 (Okla.1984). In the *Estate of Bartlett* the trustee had invested trust property improperly. Upon sale of the improper investment he made a gain and reinvested the proceeds which later resulted in a loss. This was a related investment allowing the loss to be offset by the previous gain. *Id.*

██ When a variety of investments are involved, the trustee may be liable for the losses incurred despite the fact that other investments produced profits. *Id.* Where the investments are separate, the beneficiary can elect to accept those that made a profit and hold the trustee liable for those that resulted in losses to the trust. IIA William Fratcher, Scott on Trusts, § 213.1 (4th ed. 1987).

██ In balancing the factors set forth in the restatement, no one factor is determinative of the question of whether two breaches of trust are distinct. Restatement (Second) Trusts § 213, cmt. e. However, an important element of several factors is the

conduct for fiduciaries been kept at a level higher than that trodden by the crowd. It will not consciously be lowered by any judgment of this court." *Meinhard v. Salmon,* 249 N.Y. 458, 164 N.E. 545, 546 (1928).

involvement of separate portions of the trust property. In this case seven of the twelve investments in limited partnerships and the loans to Mr. Campbell were not successive dealings with the same property but were different parts of the trust property being placed in separate investments. The different investments occurred over fifteen years. Although Boatmen's relies on the fact that each breach was due to Boatmen's policy of following Ms. Ramsey's directions, this is not determinative. In balancing the respective factors of this case, each of the seven investments in limited partnerships and the loans to Mr. Campbell were separate and distinct. Investments of trust property were made in seven separate limited partnerships, and the loans to Mr. Campbell were made at different times. These investments were not related investments for the purpose of allowing offset.

■ Five of the twelve limited partnerships syndicated by co–trustee Hoit Campbell were purchased by the trust from the Florence Hoit Trust. The record reflects that these purchases occurred at the same time with funds from the Imogene Hoit Campbell trust, and they were not successive dealings. Unlike the seven other real estate limited partnership interests purchased by trust funds, the factors considered when determining whether breaches of trust are separate or distinct support the conclusion that the five limited partnerships purchased from the Florence Hoit Campbell Trust were not separate and distinct from each other. Thus, these five purchases were related investments for the purpose of allowing offset. Therefore, gains realized by these five purchases, if any, may be used to offset losses incurred by each of the five related investments for a net gain or loss.

■ The trial court's decision will be affirmed unless it is unsupported by substantial evidence, is against the weight of the evidence, or the trial court erroneously declares or applies the law. *Murphy v. Carron*, 536 S.W.2d 30, 32 (Mo. banc 1976). The trial court erroneously applied the law in determining the damages as articulated in point II.

The portion of the judgment assessing damages is reversed. The case is remanded to the trial court for determination of the amount of loss incurred by each of the five limited partnership interests purchased by the Imogene Campbell Trust from the Florence Hoit Campbell Trust and to determine the amount of gain realized by each, to offset the losses by any gains, to utilize this net sum in determining the total damages realized by the Imogene Campbell Trust as a result of the breach of the fiduciary duty by Boatmen's, and to enter judgment accordingly. In all other respects, the judgment is affirmed.

All concur.