Michael SAIGH and Andrew
Saigh, Appellants,

v.

William K. SAIGH, et al., Respondents.

No. ED 88098.

Missouri Court of Appeals,
Eastern District,
Division Two.

Feb. 6, 2007.

Motion for Rehearing and/or Transfer to
Supreme Court Denied March 15, 2007.

Application for Transfer Denied
May 1, 2007.

Michael Thomas George, St. Louis, MO, for appellant.

Richard S. Bender, Clayton, MO, Charles F. Dufour, Jr., Michael A. Clithero, St. Louis, MO, for respondent.

Lillian Zarvel, Kewane, IL, pro se.

Before GEORGE W. DRAPER III, P.J. and GARY M. GAERTNER, SR. and ROBERT G. DOWD, JR., JJ.

PER CURIAM.

Michael Saigh and Andrew Saigh (collectively referred to as "Plaintiffs") appeal from the trial court's grant of summary judgment in favor Defendant A.G. Edwards Trust Company FSB ("AGET") and dismissing all Plaintiffs' claims asserted against AGET. On appeal, Plaintiffs argue the trial court erred in entering summary judgment in favor of AGET because there are genuine issues of material fact as to whether AGET (1) breached its fiduciary duties to the beneficiaries of the Rose Saigh Living Trust ("Trust"), (2) was liable for negligence, and (3) engaged in a conspiracy with William Saigh to freely use the Trust assets. We find the trial court erred in granting summary judgment in favor of AGET on the breach of fiduciary duty and negligence counts. We find the trial court did not err in granting summary judgment on the conspiracy count. Affirmed in part. Reversed and remanded in part.

Viewing the record in the light most favorable to Plaintiffs, the party against whom judgment was entered, the following facts were adduced. Rose Saigh was one of five children. Rose Saigh's siblings

were (1) Victor Saigh, deceased, who died without children; (2) Victoria Saigh, deceased, who is survived by her children William and Susan Schutte; (3) Fred Saigh, deceased, who died without children; and (4) Defendant William Saigh, who survives and is the father of Victoria Valli, Michael Saigh, and grandfather of Andrew Saigh and Emily Valli. Rose Saigh died without children. Fred Saigh maintained a close relationship with Rose Saigh throughout his life, and he and his long-time financial and legal advisors assisted Rose Saigh with her business affairs until his death in December 1999.

Prior to his death, Fred Saigh and his advisors assisted Rose Saigh with preparing her estate plan. On July 28, 1994, Rose Saigh as grantor executed her Indenture of Trust for her benefit. The Indenture of Trust named Rose Saigh as current beneficiary during her lifetime and named Plaintiff Michael Saigh (Rose Saigh's nephew) as primary remainder beneficiary of the Trust; appointed Rose Saigh and Fred Saigh trustees of the Trust; and named Boatmen's Trust Company as a successor trustee. Thereafter, and prior to Fred Saigh's death, Rose Saigh twice amended the Trust. On August 16, 1994, Rose Saigh executed a First Amendment to the Trust ("First Amendment"), which left Plaintiff Michael Saigh as the primary remainder beneficiary of the Trust. On July 14, 1998, Rose Saigh executed the "Second Amendment To and Complete Restatement of Rose Saigh Living Trust" ("Second Amendment"), which named Nations Bank, N.A.[1] as the successor Trustee. The Second Amendment had distributed all tangible personal property, excluding jewelry, to Plaintiff Michael Saigh, and provided for the following specific gifts: $25,000 to Victoria Valli, Rose Saigh's niece; $25,000 to Susan Schutte, Rose Saigh's niece; $25,000 to William Schutte, Rose Saigh's nephew; and $25,000 to William Saigh. Michael Saigh remained as primary remainder beneficiary. On December 29, 1999, Fred Saigh died.

On January 6, 2000, Rose Saigh executed a Durable Power of Attorney With General Powers For All Purposes ("Power of Attorney") naming her brother, William Saigh, as attorney-in-fact. On February 18, 2000, William Saigh hired attorney Edward Reilly to talk to Rose Saigh about her estate planning. On May 26 and June 22, 2000, Dr. Jack Croughan interviewed Rose Saigh at the direction of Edward Reilly to determine her competence to execute changes to estate planning documents. Dr. Croughan determined at the time of the examination in mid–2000 that Rose Saigh had testamentary capacity. Subsequent to reviewing Rose Saigh's CAT scans, Dr. Croughan concluded that she would not have had testamentary capacity at least as far back as January 2000.

In August 2000, attorney Michael Gunn replaced Edward Reilly as counsel for Rose Saigh in the revision of her estate planning documents. On October 23, 2000, Rose Saigh executed the "Third Amendment To and Restatement of The Rose Saigh Trust" dated July 28, 1994 ("Third Amendment") naming Rose Saigh, William Saigh and AGET as Trustees. The Third Amendment provided for the following devises: $10,000 to Susan Schutte; $10,000 to William Schutte; $1,000,000 to Plaintiff Michael Saigh; and $1,000,000 in trust for the benefit of Victoria Valli and her children. The residue of the estate was to be

---

1. Bank of America, N.A. ("Bank of America") succeeded Nations Bank N.A. as the successor trustee due to a merger and corporate name change. Plaintiffs sued Bank of America but it was dismissed from the lawsuit prior to the filing of AGET's Motion for Summary Judgment.

distributed to Defendant William Saigh and, if not living, his spouse Defendant Christine Saigh. If neither was then living, then the balance was to be paid to Victoria Valli or her descendants, per stirpes, or if Victoria Valli had no descendants, to the descendants of William Saigh, in equal shares, per stirpes. Michael Gunn witnessed Rose Saigh's execution of the Third Amendment and testified he believed Rose Saigh had capacity to make estate planning decisions at the time.

Dr. Joseph Dooley reviewed the CT scans of Rose Saigh's brain taken on November 2, 2000 (ten days after she signed the Third Amendment). Dr. Dooley subsequently testified that the left temporal lobe of Rose Saigh's brain was "wasted away and gone," and that in "absolutely no way" could Rose Saigh have understood the nature and content of the Third Amendment.

Pursuant to the Third Amendment, AGET became a co-trustee of the Trust. The Third Amendment was delivered to Bank of America, which was then serving as co-trustee of the Trust. Bank of America honored the Third Amendment, accepted direction from the co-trustees named in the Third Amendment, and transferred the assets of the Trust to AGET. Article Twelve of the Third Amendment expressly required AGET to "follow [Rose Saigh's] written directions with respect to sales of trust property and investment and reinvestment of trust funds" so long as she was "living and able to act." Moreover, Article Twelve made clear that AGET "shall not be accountable for any loss sustained by reason of any action taken or omitted pursuant to" Article Twelve.

In addition, the Third Amendment expressly provided that with respect to decisions regarding the administration of the Trust, AGET was to follow the directions of either Rose Saigh or William Saigh.

Article Thirteen of the Third amendment provided in pertinent part:

> In the event of any conflict or lack of agreement with regard to any decisions regarding the administration of the trust, ROSE SAIGH, if acting as Co–Trustee hereunder, shall have the right to make final decision regarding such all [sic] issues. If ROSE SAIGH is not then serving as a Co–Trustee but WILLIAM K. SAIGH is, then he shall have the right to make final decision regarding such all [sic] issues.

Finally, the Third Amendment expressly provides that:

> Disability of a Trustee [which included Rose Saigh] shall mean (1) incompetency by a court of competent jurisdiction or (2) the inability to manage financial affairs as certified in writing by two attending physicians.

On February 14, 2001, Rose Saigh executed the Fourth Amendment to the Trust dated July 28, 1994 ("Fourth Amendment"), which made changes to the Trust's devises but left AGET's role and responsibilities the same as under the Third Amendment. The Fourth Amendment changed Article Four of the Third Amendment to provide for the following devises: $10,000 to Susan Schutte; $10,000 to William Schutte; $10,000 to Lillian Zarvell, Rose Saigh's friend; $250,000 to Plaintiff Michael Saigh; and $250,000 in trust for the benefit of Victoria Valli and her children. The residue of the estate was to be distributed to William Saigh and, if not living, his spouse Christine Saigh. If neither was then living, then the balance was to be paid to Victoria Valli or her descendants, per stirpes, or if Victoria Valli had no descendants, to the descendants of William Saigh, in equal shares, per stirpes. Rose Saigh's attorney, Michael Gunn, witnessed the Fourth Amendment as he had done with the Third Amendment.

As co-trustee, AGET received multiple requests for payment for extensive repair and renovation work to the residence located at 150 South Price Road owned by Rose Saigh. Before payment of those expenses, AGET received written instruction from Rose Saigh, witnessed by her attorney Michael Gunn, which stated as follows:

> I, Rose Saigh, direct A.G. Edwards Trust Company to pay any and all bills, delivered to my corporate trustee, directly related to my residence at 150 S. Price Road, Ladue, MO. It is my desire to do extensive repairs and remodeling to my primary residence as water damage and accessibility are my concern. Please accept bills submitted by myself or William K. Saigh, Co–Trustee. This will be carried out until further notice. These are my wishes.

Rose Saigh was over 90 years old when the renovation began and never resided at 150 South Price Road once the renovation began. On June 18, 2001, William Saigh leased a room for Rose Saigh at the hotel Clayton on the Park and, within 30 days, Rose was moved there, where she lived the rest of her life. Throughout this period, Rose was the recipient of continual nursing care. Once the remodeling and renovations were completed, William Saigh and his wife, Christine, moved into the home at 150 South Price Road. Rose Saigh died before the renovations were completed.

The record shows that expenditures for the repairs and renovations to 150 South Price Road eventually totaled over $1,200,000. In May 2000, before the repairs and renovations, the house was appraised at $450,000. In March 2005, after the repairs and renovations, the house was appraised at approximately $1,200,000.

On August 8, 2002, Plaintiffs filed this lawsuit shortly thereafter asserting claims for breach of fiduciary duty, negligence, and civil conspiracy against AGET.[2] Plaintiffs also sought attorneys fees and punitive damages against AGET. AGET moved for summary judgment on all of Plaintiffs' claims against it, and the trial court granted AGET's motion.[3] This appeal follows.

Our review of summary judgment is essentially de novo. *ITT Commercial Finance Corp. v. Mid–America Marine Supply Corp.*, 854 S.W.2d 371, 376 (Mo. banc 1993). Summary judgment is proper when there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Rule 74.04(c)(6). A "genuine issue" exists where the record contains competent materials that evidence two plausible, but contradictory, accounts of essential facts. *Id.* at 382. Any evidence in the record that presents a genuine dispute as to material facts defeats the motion. *Id.*

We address Plaintiffs' first and second points together because they are intercon-

---

**2.** In its petition, Plaintiffs also requested declaratory judgment (Count I) and trust contest (Count II) regarding Amendments Three and Four of the Trust as well as the Power of Attorney. In addition to AGET and William Saigh, Christine Saigh, Lillian Zarvell, Victoria Valli, and Emily Valli were named as Defendants under these counts.

**3.** The dismissal of all Plaintiffs' claims became final when on April 13, 2006, seven days after its grant of summary judgment and after a two-day hearing before a jury, the trial court entered an order entitled "Judgment, Order, and Decree." This "order" was in connection with a settlement agreement entered into among Plaintiffs Michael Saigh and Andrew Saigh and Defendants William Saigh, Christine Saigh, Victoria Valli, Emily Valli, Lillian Zarvel. AGET was not a party to the consent order. We note the consent order was not part of the summary judgment record and as such is not properly before this court. *Allen v. Midwest Institute of Body Work and Somatic Therapy*, 197 S.W.3d 615, 621 (Mo. App. W.D.2006).

nected. In their first and second points, Plaintiffs argue that the trial court erred in granting summary judgment because there are genuine issues of material fact as to whether AGET acted in Rose Saigh's best interest and whether it failed to exercise reasonable care in the administration of the Trust thus making it possible for William Saigh to commit negligence or wrongdoing. We agree.

■ "A trustee is a fiduciary of the highest order and is required to exercise a high standard of conduct and loyalty in administration of the trust." *Ramsey v. Boatmen's First Nat. Bank of Kansas City, N.A.,* 914 S.W.2d 384, 387 (Mo.App. W.D.1996). Although the trustee has many duties emanating from the fiduciary relationship, the most fundamental is the duty of loyalty. *Id.* As part of its duty of loyalty, the trustee is to administer the trust solely in the interest of the beneficiary. *Id.*

■ The general rule regarding liability for a co-trustee's actions is that "a trustee is not liable to the beneficiary for a breach of trust committed by a co-trustee." *In re Estate of Chrisman,* 746 S.W.2d 131, 135 (Mo.App. E.D.1988)(*citing* RESTATE-MENT (SECOND) OF TRUSTS, SECTION 224 (1959)). Only under limited circumstances will a co-trustee be liable. Those circumstances are when a trustee:

(a) participates in a breach of trust committed by his co-trustee; or

(b) improperly delegates the administration of the trust to his co-trustee; or

(c) approves or acquiesces in or conceals a breach of trust committed by his co-trustee; or

(d) by his failure to exercise reasonable care in the administration of the trust has enabled his co-trustee to commit a breach of trust; or

(e) neglects to take proper steps to compel his co-trustee to redress a breach of trust.

*Id.*

AGET argues the undisputed facts negate each of the exceptions to the general rule. We agree that the undisputed facts demonstrate AGET (1) did not "participate" in any breach of trust, (2) made no delegations to William Saigh, (3) did not "approve," "acquiesce" in, or "conceal" any purported "breach of trust," or (4) neglect to compel its co-trustee, William Saigh, to do anything under the Trust. However, we find the undisputed facts do not negate the possibility that AGET failed to exercise reasonable care in the administration of the trust by failing to investigate the expenses incurred at 150 South Price Road.

To support its arguments that it was authorized to approve the $1,200,000 remodeling project at 150 South Price Road, AGET primarily relies on the document dated March 19, 2001. The document was prepared by AGET and witnessed by Michael Gunn. The March 19, 2001 document stated that AGET was "to pay any and all bills, delivered to my corporate trustee, directly related to my residence at 150 South Price Road, Ladue, MO. It is my desire to do extensive repairs and remodeling to my primary residence as water damage and accessibility are my concern."

In deciding whether the March 19, 2001 letter of direction authorized AGET, as a matter of law, to act as it did, we find Ramsey very instructive. In Ramsey, a 92–year–old woman with no training in financial matters invested in limited partnerships with her son who was a co-trustee and beneficiary, and lost approximately $571,000 in the transactions. *Id.* at 386–387. Boatmen's Bank, the corporate co-trustee, claimed they were not responsible for the loss because Ms. Ramsey, as grant-

or and beneficiary, had given her written consent and direction to the losing transactions. *Id.* at 386. In its recitation of the facts of the case, the court found that "[w]hen advising his mother to authorize particular investments, Mr. Campbell [the son, co-trustee, and beneficiary] did not fully explain them but only gave her information he thought she could understand. He merely presented her with a proposed investment and had her sign an authorization which he provided. Boatmen's merely did as requested by the trust beneficiary via Mr. Campbell without communicating with Ms. Ramsey about the investments." *Id.* at 387.

■ Based on these facts, the court found that because "[a] co-trustee cannot delegate the administration of a trust to a single trustee," "Boatmen's did not fulfill its fiduciary responsibility." *Id.* at 388–89. The Ramsey court further found that:

> If there are several trustees, each trustee is under the duty to the beneficiary to participate in the administration of the trust and to use reasonable care to prevent a co-trustee from committing a breach of trust or to compel a co-trustee to redress a breach of trust.

*Id.* [Emphasis added.] Moreover, the Ramsey court held that "a corporate trustee ... cannot take a passive role in the administration of the trust for which it accepted a fiduciary responsibility as a trustee." *Id.* 914 S.W.2d at 388. Instead, the court held that a corporate trustee is obligated to inquire into and express its expert opinion on the nature of the proposed investments and their potential ramifications. *Id.* at 389. Similarly, a trustee is responsible for "omissions—breaches of trust—of his co-trustee to which he consented, or which by his own negligence he made possible for his [co-trustee] to commit." *Id.* (citing *In re Estate of Chrisman,* 746 S.W.2d at 135).

■ Here, the record demonstrates that the expenditures for renovating and remodeling the residence at 150 South Price Road ultimately totaled $1,261,527.17. The invoices with respect to the renovation included but are not limited to $373,918.28 to Glen Alspaugh for kitchens and baths (including two sub-zero refrigerators, an ice-maker, Gaggenau convection oven, and Gaggenau steam oven, a first floor bath at $59,041.00, and second floor bath at $47,888.00), $250,503.74 to Riggs Construction for a family room addition, $97,545.50 to Koch Brothers for interior painting and decorating, $64,848.65 to Pella for windows and doors, $59,472.55 to Lighting & Power Services for light fixtures (and a T1 internet line), $50,760.00 to Kirberg Roofing for a new clay tile roof, and $40,600.00 to Brader Marble and Granite to put a granite floor over an existing terrazzo floor. From the record, there is at least a genuine issue of material fact as to whether the March 19, 2001 letter of direction authorized the aforementioned expenditures with regard to Rose Saigh's concerns of "water damage and accessibility."

The record demonstrates that AGET did not make an independent inquiry into the necessity of spending over $1,200,000 to renovate the residence at 150 South Price Road, especially considering the qualifying language of water damage and accessibility contained in the letter of direction. Daniel Buckley, Associate Vice President, Supervisor of Trust Administration at AGET, initially inquired into the expenses being incurred to renovate the house, but ended the inquiry upon seeing the March 19, 2001 letter in the file. Mr. Buckley had questions about the expenditures that he discussed with Donna Kloustemeyer, trust administrator at AGET, but those discussions always ended with the fact that they had the March 19, 2001 letter in the file. There are genuine issues of material

fact as to whether the letter of direction specifically authorized the expenditure of over $1,200,000 on the renovation of 150 South Price Road, and by failing to investigate the necessity of such expenditure, whether AGET acted in Rose Saigh's best interest and exercised reasonable care in the administration of the Trust.

The trial court erred in granting summary judgment in favor of AGET and finding that, as a matter of law, AGET was not liable for a breach of fiduciary duty and negligence because there are genuine issues of material fact as to whether it acted in the beneficiary's best interest and exercised reasonable care in approving the $1,200,000 renovation to the estate property. Points one and two are granted.

In their third point, Plaintiffs argue the trial court erred in entering summary judgment in favor of AGET because there are genuine issues of material fact as to whether AGET engaged in a conspiracy with Defendant William Saigh to freely use the Trust assets. We disagree.

In order to prove a civil conspiracy against AGET, Plaintiffs must establish:

(1) two or more persons; (2) with an unlawful objective; (3) after a meeting of the minds; (4) committed at least one act in furtherance of the conspiracy; and, (5) the plaintiff was thereby damaged.

*Oak Bluff Partners, Inc. v. Meyer*, 3 S.W.3d 777, 780 (Mo. banc 1999). "[P]roof of the conspiracy must be supported by clear and convincing evidence." *Chmieleski v. City Products Corp.*, 660 S.W.2d 275, 289–290 (Mo.App. W.D.1983). There must be clear and convincing evidence that the alleged conspirator "knowingly performed any act or took any action to further carry out the unlawful purposes of the conspiracy". *Id.* at 290.

Plaintiffs allege that "there is more than sufficient evidence" that AGET and William Saigh entered into a conspiracy "to give [William] Saigh free and unfettered reign to use the Trust assets as he desired." On the undisputed facts, there is no evidence that AGET agreed with William Saigh to carry out any "unlawful objective" or that AGET "knowingly" acted to carry out "the unlawful purposes of the conspiracy." The trial court did not err in granting summary judgment in favor of AGET on Plaintiffs' claim of civil conspiracy. Point three is denied.

Affirmed in part. Reversed and remanded in part.